JACOB WETZ ET AL. v. LOUISA SCHNEIDER ET AL.

Decided January 6, 1904.

**1.—Will—Undue Influence—Fraud.**

Undue influence, in order to vitiate a will, must amount to moral coercion, and be such as constrains the testator to do what is against his purpose and desire. Evidence held not to amount to the exercise of undue influence, or the practice of fraud in this case.

ON MOTION FOR REHEARING.

**2.—Practice on Appeal—Remand of Cause.**

When there is no evidence to sustain a judgment the Court of Civil Appeals may render judgment for the appellant, or may reverse and remand as it may deem best. If the evidence is conflicting, but a strong preponderance of it is against the judgment, the only proper disposition of the case is to reverse the judgment and remand the cause.

Appeal from the District Court of Guadalupe. Tried below before Hon. M. Kennon.

The opinion fully states the case.

*F. J. Maier, H. G. Henne,* and *Wurzbach & Woods,* for appellants.

*Dibrell & Mosheim* and *Adolph Seiderman,* for appellees.

FLY, ASSOCIATE JUSTICE.—On March 23, 1902, Henrietta Stolte departed this life, and appellants sought to probate her last will and testament in the County Court of Guadalupe County. Louisa Schneider, a daughter of the testatrix, joined by her husband W. J. Schneider, filed a protest against the probate of the will. The contest was sustained in the County Court and on appeal to the District Court judgment was obtained declaring the will null and void, and that it should not be probated.

There were several grounds for contest alleged by appellees, but all were practically abandoned except one as to undue influence being exercised, and fraud perpetrated on the testatrix through a certain comic valentine.

The allegations necessary to be considered are as follows:

"Contestant, Louisa Schneider, and her husband Wm. J. Schneider are resident citizens of Guadalupe County, Texas, and the proponents are also resident citizens of Guadalupe County, Texas, except Caroline Wetz and her husband Henry Wetz, who reside in Comal County, Texas. The testatrix, Henrietta Stolte, deceased, was her mother, and contestant is one of the children and heirs of said Henrietta Stolte, deceased, and is entitled to an undivided one-sixth interest in her estate, or to an equal share in said estate with the proponents Wilhelminie Wetz, Caroline Wetz, Selma Ruederich, Augusta Nuhn and Rudolph Stolte, the said Henry Stolte having conveyed all of his interest in his mother's estate prior to her death and in anticipation thereof. The testatrix, Henrietta Stolte, departed this life on the 22d day of March, 1902,

leaving an estate of the probable value of $50,000, and that the alleged will of said testatrix, which is said to have been made and published on the 9th day of August, 1901, practically disinherits this contestant, leaving her property of only nominal value, situated in the town of New Braunfels. That the equitable interest of this contestant in the estate of her mother, Henrietta Stolte, testatrix, is of the reasonable value of $8333.33 1-3. This contestant has never received out of said estate any advancement or sum of money from any of the heirs of said testatrix or from her deceased mother, and she here now protests against the admission to probate of the instrument offered by proponents which purports to have been executed and published on August 9, 1901, and her protest is based on the following objections, to wit: Because at the time of the alleged execution and publishing of said will by said Henrietta Stolte on the 9th day of August, 1901, and for several years prior thereto, the testatrix, contestant's said mother, was laboring under a misapprehension of certain facts which rendered her incapable of viewing this contestant from an impartial standpoint. That during the year 1896 the said testatrix, plaintiff's mother, received through the mail at Marion, in Guadalupe County, Texas, a certain comic valentine, which was intended as a burlesque upon said Henrietta Stolte, the testatrix, and was calculated to incite in her a high degree of mortification and shame on account of her age and declining health. Said valentine was the picture of an old woman with a washboard and dressed in an ugly, comical manner. That at the time said testatrix received said comic valentine which was designed, and which in fact did produce in her mind a certain degree of shame and mortification, and which said valentine held up to ridicule the said Henrietta Stolte through the fraud and design on the part of proponents, and was made to believe that said valentine had been sent her, the said Henrietta Stolte, by this contestant, Louisa Schneider, her daughter. That as a matter of fact this contestant, nor anyone for her, nor anyone with her knowledge or consent, was instrumental in sending said valentine to said Henrietta Stolte, and this contestant was perfectly innocent of the offense charged against her through the willful design on the part of the proponents or some of them in this case. That Rudolph Stolte and the wife of Rudolph Stolte, and Mrs. Selma Ruederich and Caroline Wetz, and Wilhelminie Wetz, and Mrs. Augusta Nuhn were instrumental in making the said Henrietta Stolte believe that contestant, Louisa Schneider, had sent said valentine or was instrumental in sending it. That as soon as contestant learned that she had been accused of sending said valentine she went to her mother, for whom she had great fondness and affection, and explained to her that she had not sent or been instrumental in sending said valentine and that she had no knowledge of the same. That said proponents and each of them, by hints, insinuations, innuendos, and by direct charge that said contestant had sent said valentine to Henrietta Stolte for the purpose of subjecting her to ridicule, shame and mortification, and ever after said year 1896 up to the time of the making of said

will on the 9th day of August, 1901, made said Henrietta Stolte believe that this contestant had sent said comic valentine to her. That on the day on which said will was made, Mrs. Augusta Nuhn, by a direct state- ment to said Henrietta Stolte, made her believe this contestant had sent said valentine to said Henrietta Stolte, and on said 9th day of August, 1901, on the morning before said Henrietta Stolte left the town of Seguin to go to her home near Marion, and on several occasions prior thereto, the said Augusta Nuhn, or Mrs. F. Nuhn, stated to Mrs. Henrietta Stolte that contestant should not be given any of testatrix's prop- erty, and testatrix should make a will and leave out said Louisa Schneider, this contestant, for the reason that said Louisa Schneider had already caused so much trouble in the family, meaning thereby, and conveying to the mind of Henrietta Stolte, that this contestant had sent to said testatrix said comic valentine as aforesaid."

In the will executed by Mrs. Stolte she gave to her children, Mrs. Wilhelminie Wetz, Mrs. Caroline Wetz, Mrs. Augusta Nuhn, Mrs. Selma Ruederich, and Rudolph Stolte, 1046 acres of land, it being provided that it should be divided among them so as to give Mrs. Wetz and Rudolph Stolte each twenty-five acres more than the other three. Pro- vision was made for the division of the property with reference to im- provements, etc. To the same children and Henry Stolte two lots in Marion were given in equal shares. To Mrs. Schneider, the contestant herein, were given two lots in the town of New Braunfels with the im- provements thereon. To Ermine Wetz, a grandchild, was bequeathed $100 and two cows and calves. All the remaining property, consisting of cattle, farming implements and money and other personal property, was bequeathed share and share alike to Mrs. Wilhelminie Wetz, Mrs. Caroline Wetz, Mrs. Nuhn, Mrs. Ruederich, Rudolph Stolte and Henry Stolte. Jacob Wetz, a son-in-law, was appointed independent executor of the will.

The court properly instructed the jury that all the formal require- ments of the law had been complied with in the execution of the will, and the matter went before the jury on the question of undue influence and fraud upon the part of the proponents of the will. By the charge the issues were still further narrowed by confining the inquiry to state- ments made in regard to a comic valentine received by the testatrix. Appellees do not complain of the issues of undue influence and fraud being confined by the court to the matter of the comic valentine, and to the discussion of that matter alone this opinion is directed.

There was considerable evidence as to the impaired condition of the mind and body of the testatrix previous to and at the time of the execu- tion of the will, but the evidence failed to show a lack of testamentary capacity.

It is a rule governing in ascertaining whether undue influence was exerted over the mind of a testator, that the influence was such that it induced the testator to act contrary to his own wishes, and to make a different will from what he would have made if he had been left free.

to exercise his own wishes and desires according to his own judgment and discretion. As said in Underhill on Wills, sec. 125: "His mind must have been hindered and restrained in its actions. And it is not material whether his volition was overcome by threats or fear, or by falsehoods, importunities or annoyances. If the influence was sufficient to constrain him to do what was against his will, so that his testament speaks the mind of another and not his own, it is undue, and the will is void. His free agency must have been destroyed by the influence brought to bear upon him; and it is not material how this was done, so long as he was unable to resist through weakness or fear, or the desire for peace and quiet."

No matter how great the fraud may have been nor how vigorous and active the influence produced upon and exerted over the testator, they would not avail to set aside the will unless they were sufficient to overcome the volition and desire of the testator. Patterson v. Lamb, 21 Texas Civ. App., 512; Barry v. Graciette (Texas Civ. App.), 71 S. W. Rep., 309. As said in the last named case: "His free agency must have been destroyed by the influence brought to bear upon him. And it is not material how this was done so long as he was unable to resist, either through weakness or fear, or desire for peace and quiet. It must also be kept in mind that the undue influence must have acted directly on the mind of the testator at the time of execution of the will."

Not every influence brought to bear upon the mind of a testator by a beneficiary will be classed as undue influence. Persuasion, entreaty, cajolery, importunity, argument, intercession and solicitation are permissible, and can not be held to be undue influence unless they subverted and overthrew the will of the testator and caused him to do a thing that he did not desire to do. No more could a will made from mere persuasion, entreaty or argument, which has been weighed and considered by the testator, and his own mind made up and voluntarily formed, be classed as undue influence, than could the arguments of counsel to a court which are weighed and considered in arriving at a just conclusion as to the law of the case be denominated undue influence.

The will in this case can not be impeached on the ground of testamentary incapacity, for the facts established that Mrs. Stolte knew what she was doing and was carrying into effect an intention that had been formed for years. She had formed a prejudice against her daughter in 1896, when she received a comic valentine which she believed was sent her by her daughter, Louisa Schneider. Her mind was never disabused of that belief, but on the other hand was confirmed, not by the representations of the proponents of the will, but rather by the unfilial conduct of Mrs. Schneider, and she wrote her condemnation of the course of her daughter into her last will and testament. Mrs. Stolte was shown to have been a woman of strong energy and intelligence, high temper, and violent prejudices. She was left a widow with seven children and property valued at some $3000, but by her energy, economy and business qualities she amassed a large property and died possessed of

a fortune valued at, perhaps, $45,000. It was hers, the product of years of toil, and perhaps privation. She had the absolute right of disposal of the property. Her children had no legal right to any portion of it, and she could have bequeathed it to anyone that she desired. There may have been some moral obligation resting upon her to give her fortune to her children, but such obligation could be set aside by her, or it may have been destroyed by the undutiful and unfilial conduct of the children. Whatever social or moral obligations she may have owed to her children could be destroyed by her legal right to dispose of her property as she deemed advisable and proper, and unless she was induced by undue and improper influences or fraud to substitute the will of another for her own in executing her will, it must stand in the courts of the country. When it was established that the testatrix was in possession of a sound and disposing mind and memory, and that the formalities of the law had been complied with, the will should have been admitted to probate unless undue influence and fraud were shown to have existed and to have dictated the disposition of the property. The undue influence herein mentioned is often confused with fraud as though there was no distinction between them. It has been said that mere misrepresentation rarely ever arises in a will case, but misrepresentation or fraud is nearly always accompanied with undue influence. "Undue influence upon a testator consists in substituting virtually the will of the person exercising it for that of the testator. Fraud upon the testator consists in making that which is false appear to him to be true, and so affecting his will. Undue influence need not be attended at all with deception or circumvention. Fraud need not be attended with undue influence, except in so far as the misrepresentation amounts to influence; there need be no pressure, such as is necessary to constitute influence." 1 Big. on Fraud, p. 571.

The mere fact that Mrs. Stolte may have had an unjust and unreasonable prejudice against Mrs. Schneider, or may have had a wrong impression as to her connection with the insulting valentine sent to her, is no indication in itself that she was prevented from providing for Mrs. Schneider in the will by fraud or undue influence. If, however, her prejudice against her daughter was engendered and fostered by beneficiaries under the will a different case would be presented. In other words, if the beneficiaries under the will had stated to Mrs. Stolte that Mrs. Schneider had sent the valentine, knowing that she had not done so, and thereby created such a prejudice against Mrs. Schneider as to cause her to be disinherited, the will would be invalid. The false statements must have been made to the testatrix by the beneficiaries under the will, or through their procurement or agency. They can not be held responsible for the unauthorized statement of anyone, no matter how closely connected by ties of blood or marriage. The facts found in the record show that Mrs. Schneider testified that her mother told her on the day that the valentine was received that Mrs. Rudolph Stolte had told her that Mrs. Schneider had sent the valentine. Mrs. Rudolph

Stolte, presumably, was the wife of Rudolph Stolte. Henry Stolte said his mother said Mrs. Rudolph Stolte told her the same thing, and also said that Rudolph and Mrs. Nuhn believed Mrs. Schneider sent the valentine. Mrs. Rudolph Stolte evidently believed her statement to be true, because she charged Mrs. Schneider with sending the valentine after the death of testatrix. Carl Reichart swore that the testatrix told him that she had showed the valentine to "other people," and they had said Schneider had sent it. Schneider was Mrs. Louisa Schneider's husband. She told that witness that Franz Nuhn had told her that Schneider sent it. Who Franz Nuhn is does not appear. Ed Stewart said the testatrix told him the Schneiders had sent the valentine, but did not give her means of knowledge. Mrs. Wolfe testified that testatrix wanted to see Mrs. Schneider, and Mrs. Nuhn said she did not want her, and that testatrix ought not to give Mrs. Schneider any of the property, because she had caused so much trouble to her. This is the whole of the evidence offered by the contestants as to the valentine. Not one of the beneficiaries in the will was shown to have any connection with the statements made to the testatrix in regard to the valentine, except through the evidence of Henry Stolte to the effect that his mother had said that Rudolph and Mrs. Nuhn believed Mrs. Schneider had sent it. If they believed she had sent it, it was not a fraud or the exercise of undue influence to say so. This belief seems to have been expressed long before the will was executed. Mrs. Schneider charged Mrs. Rudolph Stolte with stating that she had sent the valentine. If she did so state, it was not shown that she made the statement with the knowledge or consent of her husband or any other beneficiary. The jury were permitted to consider but one subject bearing on fraud and undue influence, and appellees contend in their brief that the charge in that respect was right, and that was the statements in regard to the comic valentine, and to justify a finding that the proponents of the will had used undue influence, it was incumbent upon the contestants to show that the statements were false, that proponents knew they were false, and were made to the testatrix with the intent to induce her to disinherit Mrs. Schneider. The testimony, however, does not go to that extent, but on the other hand shows that a belief was expressed that Mrs. Schneider had sent the valentine. There is nothing to indicate whether the statements of any of the proponents or Mrs. Rudolph Stolte were made before or after the testatrix had expressed her opinion that Mrs. Schneider had sent the fatal valentine.

Let it be conceded that up to the time that the valentine was received the most amicable feelings existed between the testatrix and Mrs. Schneider, it does not follow that her opinion was not formed from her independent thought and reasoning, but from what was said by her other children. Nor is it a logical deduction that because the testatrix was greatly incensed by the supposed improper conduct of her daughter, and that such anger was inspired or intensified by remarks made at the time of the reception of the valentine, that such statements caused that

daughter to be given less of the property than the other children. That may have been the beginning of her resentment against her daughter, but it can not be said that it caused the execution of the will in the form it assumed. On the other hand it was proved that at first Mrs. Nuhn was associated by testatrix with Mrs. Schneider in the sending of the obnoxious paper, and on the occasion of the conversation held by Mrs. Nuhn and Mrs. Schneider with their mother, the most of the anger and violence of the testatrix was directed towards Mrs. Nuhn. The latter, however, when her mother became sick about a year after the reception of the valentine, went to her and by her love and devotion obtained a reconciliation with her which lasted to the death of the testatrix. After that conversation on the day the valentine was received, when her denial of having sent it was not accepted as true, Mrs. Schneider never entered her mother's house, nor ever spoke to her, although she met her several times. When she was sick the daughter never visited her, and she seeks to justify her unnatural conduct by saying that her mother never spoke to her. The aged woman labored under the belief that it was the duty of the younger woman to come to her for reconciliation, and that she would have become reconciled with her daughter is shown by what she said and by her reconciliation with the other daughter. The dictates of filial love and respect, it would seem, should have prompted the daughter to have laid aside all feelings of anger, resentment or pride, and to have sought reconciliation with her aged mother, who, according to the proof of appellees, was sick and decrepit for years before her death. But the daughter did not respond to any such peaceful and praiseworthy sentiments, if they entered her mind and heart; never sought her mother until she was importuned to do so by proponents, when she was unconscious on her deathbed, and the hour for reconciliation and forgiveness was forever gone.

The evidence fails to establish that the resentment of the testatrix, which culminated in her will, was kept alive by the suggestions of proponents in regard to the valentine, but rather that the obduracy, pride, continued hardness, indifference, neglect and disregard of the daughter to her mother, through a series of years, added fuel to the fire of resentment, kindled by the reception of the valentine. The example of Mrs. Nuhn shows that it could have been smothered and extinguished by kindness and attention, but the opportunity was neglected. The natural harvest of such a course of conduct was resentment by the mother and disinheritance of the daughter. Before her desires can be frustrated and her written wishes rendered nugatory, it must clearly appear that the will was not the outcome of her volition, but was the product of the fraud or undue influence of appellants. The evidence fails to meet that demand.

It will be unnecessary to discuss the various assignments of error. The cause having been tried by jury, judgment will not be rendered in this court, but the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

## ON MOTION FOR REHEARING.

The appellants refer this court to the case of Henne v. Moultrie, 2 Texas Law Journal, 56, 8 Texas Ct. Rep., 758, as sustaining their contention that judgment should be rendered in this court probating the will of Henrietta Stolte. That decision enunciates no new doctrine as to the state of the evidence justifying rendition of judgment by appellate courts, but is simply a reiteration of other decisions.

When there is no evidence to sustain a judgment the Court of Civil Appeals may render judgment for the appellant, or may reverse and remand as it may deem best. It is a matter of discretion which course the court will pursue. If the evidence is conflicting, but a strong preponderance of it is against the judgment, the only proper disposition of the case is to reverse the judgment and remand the cause. Patrick v. Smith, 90 Texas, 267; Stevens v. Masterson, 90 Texas, 417.

We do not think the facts in this case bring it within the rule first above stated, and this court, therefore, has no authority to render judgment.

It would seem from the opinion in the Henne v. Moultrie case that the same rule prevails in cases tried by jury as in those tried by the court, and the concluding portion of the original opinion of this court which bases the refusal to render on the fact that the cause was tried by jury will be eliminated therefrom.

The motion is overruled.

*Overruled.*