JENNINGS v. JENNINGS et al. (No. 947.)

(Court of Civil Appeals of Texas. El Paso. May 15, 1919.)

1. WILLS ⬳164(5)—UNDUE INFLUENCE—EVIDENCE ADMISSIBLE.

On the issue of undue influence exerted on testatrix by her husband, evidence that he had whipped her and used abusive language toward her, and was otherwise guilty of unkind treatment, was admissible.

2. EVIDENCE ⬳471(14) — CONCLUSIONS OF WITNESS—UNDUE INFLUENCE.

In contest of probate of a will of deceased wife of proponent involving issue of undue influence exerted by proponent, testimony of daughter that her father dominated her mother was a conclusion, and inadmissible.

3. WILLS ⬳165(2)—UNDUE INFLUENCE—IRRELEVANT TESTIMONY.

On the issue of undue influence exerted on testatrix by her husband, the proponent, evidence of a conversation 12 years before the execution of will, with reference to what part of her father's estate testatrix wanted, was irrelevant.

4. WILLS ⬳164(5) — UNDUE INFLUENCE—EVIDENCE ADMISSIBLE.

On the issue of undue influence exerted on testatrix by her husband, the proponent, testimony that on the morning after her father's death proponent demanded his wife's share of the estate, was irrelevant.

5. WILLS ⬳166(2)—CONTEST—GROUNDS.

A wife's will in favor of her husband cannot be set aside upon evidence that upon one occasion during the 36 years of married life he objected to the purchase of some clothing.

6. WILLS ⬳164(1)—CONTEST—UNDUE INFLUENCE—EVIDENCE ADMISSIBLE.

On the issue of undue influence exerted on testatrix by her husband, the proponent, testimony of a son that he did not know of existence of the will was inadmissible.

7. WILLS ⬳164(5)—CONTEST—UNDUE INFLUENCE—EVIDENCE ADMISSIBLE.

On the issue of undue influence exerted on testatrix by her husband, the proponent, testimony with reference to proponent getting a stranger to prepare will, instead of a kinsman of wife's family, held irrelevant.

8. WILLS ⬳166(2)—CONTEST—UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY.

Evidence held insufficient to show undue influence over testatrix by her husband.

9. WILLS ⬳163(2)—CONTEST—UNDUE INFLUENCE—PROOF.

The burden is on contestant to prove undue influence was exercised by a husband over his wife at the time she executed her will in his favor.

Error from District Court, Stephens County; Thos. L. Blanton, Judge.

Application by E. Y. Jennings to probate the will of his deceased wife, Modena V. Jennings. G. C. Jennings and others contest the probate on the ground of mental incapacity and undue influence. There was judgment refusing probate in the county court, and a like judgment on appeal to the district court, and proponent brings error. Reversed and remanded.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

J. R. Stubblefield and N. N. Rosenquest, both of Eastland, for plaintiff in error.

Chas. H. Veale, of El Paso, Scott & Brelsford, of Eastland, and W. C. Veale and C. M. Caldwell, both of Breckenridge, for defendants in error.

HIGGINS, J. Plaintiff in error, E. Y. Jennings, filed his application in the county court of Stephens county to probate the will of his deceased wife, Modena V. Jennings. Mrs. Herrington, Mrs. McNabb, Mrs. Mitchell, and Mrs. Lacey, married daughters of the proponent and deceased, joined by their respective husbands, and Grover C. Jennings, a son of proponent and the deceased, contested the probate of the will upon the ground of mental incapacity and undue influence. In the county court the case was submitted to a jury upon the issues mentioned, and a verdict returned in favor of contestants. Judgment was there rendered, refusing to probate the will. Upon appeal to the district court the case was submitted to the jury upon the issue of undue influence, and a verdict rendered in favor of the contestants. Judgment was there rendered that the will be not admitted to probate. From this judgment proponent prosecutes this writ of error.

## Opinion.

It is assigned as error that the court erred in admitting certain evidence, and that the evidence is insufficient to show undue influence. The record discloses the following facts:

Proponent and Modena Veale, his deceased wife, were married in 1880, and lived together as man and wife for 36 years, and until she died on April 20, 1916. To them 15 children were born, of whom 13 survive. Five of the adults, as stated above, have joined in the contest of her will. They lived in Stephens county during their entire married life. They accumulated a community estate, consisting of land and personal property. Mrs. Jennings also had some separate property which it seems she inherited from her father. They lived upon their land about 10 miles from the town of Ranger. About February, 1915, Mrs. Jennings became afflicted with cancer, which resulted in her death. On November 27, 1915, Mr. and Mrs. Jennings together came to the town of Ranger, where they each executed their wills. They procured the services of Hon. J. R. Stubblefield, an attorney, of Eastland, Tex., to prepare the wills for them. By the terms of her will, Mrs. Jennings gave to her husband all of her personal property. All of her real estate she gave to Mr. Jennings for life, with remainder to their children. She invested him with power to sell and dispose of the land as he might see proper. It provided that after his death the real estate should pass to their children and their descendants, share and share alike, as they would inherit under the law of descent and distribution; and if the real estate had been sold by the husband during his life, then that the proceeds thereof should descend and pass as the real estate. She appointed her husband as executor, and directed that no bond be required of him, and that no action be taken in the probate court except to probate the will and file an inventory and appraisement. Mr. Jennings' will gave his personal property to his wife; his real estate to her for life, with remainder to their children, and appointed her executrix without bond. Otherwise it was precisely the same as Mrs. Jennings' will. Mr. and Mrs. Jennings went to the office of the First National Bank of Ranger, and there signed their wills in the presence of F. W. Melvin and Rex C. Outlaw, whom they desired to witness the same. At the time of her death four of the surviving children of Mr. and Mrs. Jennings were minors living at home. Two of them were girls, 16 and 12 years old, and two boys, 14 and 8 years old.

There is not a scintilla of evidence in this record impeaching the mental capacity of Mrs. Jennings. To sustain the allegation of undue influence evidence was adduced by the contestants as follows: Some of the contestants testified that on various occasions, and long prior to the execution of the will, Mr. Jennings had whipped and assaulted his wife, used abusive language towards her, and was otherwise guilty of unkind treatment. Most of these matters related to instances long prior to the execution of the will, some of them being as remote as 12 years. A Miss Irene Gold was also permitted to testify that about 5 years before the death of Mrs. Jennings she heard proponent make the statement that on the evening before he had whipped his wife.

Contestant Mrs. Herrington testified she had lived at home for 23 years prior to her marriage, and that her father dominated her mother. This was objected to upon the ground that it was the opinion of the witness. Mrs. Mitchell, contestant, testified that 12 years prior to the death of her mother she heard this conversation between her father and mother:

"About the time my mother's father died, I heard my mother tell my father that she wanted some land nearer our home, as her portion of her father's estate. I heard her state that she did not desire the canyon land, which lay further from our home, as her portion of her father's estate. At the time she made this statement my father and mother were talking about my mother's part of her father's estate. My mother did not like it because my father went down to see my grandmother in reference to the matter. My mother always said that she did not want the canyon land as her portion of her father's estate."

Grandma Veale, the mother of Mrs. Jennings, was permitted to testify that when her husband died her daughter inherited a portion of his estate, and that the next morning after her husband's death proponent came to her house and demanded his wife's share of the property, and that she thereafter told Mrs. Jennings about Mr. Jennings' conduct, and that when she told Mrs. Jennings thereof the latter went into the kitchen and cried. Mrs. Herrington, contestant, was permitted to testify that she knew an instance in which her mother wanted to purchase some clothing and her father refused to permit her to do so. Contestant Grover Jennings testified that the first time he heard about his mother's will was about July 3, 1916, after the notices were posted. Grover Jennings also testified:

"Judge W. C. Veale is related to the Jennings family. He was related to my mother, who was a Veale before she married. Judge W. C. Veale was residing in Breckenridge at the time my mother is said to have made the will in controversy. At the time this purported will was made E. Y. Jennings resided 10 miles from Ranger, in Eastland county, and it was 25 miles to Breckenridge. It is about 12 miles from Ranger to Eastland. My mother was not intimate with Judge W. C. Veale during her lifetime."

[1, 2] We think that all of the testimony indicated above was improperly admitted, except that showing that proponent had whipped and assaulted his wife and abused her. All the rest of the testimony was inadmissible, and calculated to prejudice and inflame the minds of the jury against the proponent, except the testimony of Mrs. Herrington that her father dominated her mother, and this was a conclusion of the witness. Whether a man dominates his wife, or vice versa, is sometimes a very debatable question. Many a man fancies that he rules his wife when the reverse is the case, and a declaration by an interested contestant of her mother's will that her father dominated her mother is no more than the expression of an opinion, and inadmissible.

[3] It is not apparent that the testimony of Mrs. Mitchell, as to the conversation between her father and mother about 12 years ago, was at all relevant to the issue of undue influence. The fact that her mother stated that she wanted the land nearer her home as her portion of her father's estate, and did not desire the canyon land farther away, was surely not evidence of undue influence exercised 12 years later, when Mrs. Jennings executed her will.

[4] Neither does it seem that there was any relevancy in the testimony of Grandma Veale about Mr. Jennings' conduct when his wife's father died. Of course, such conduct was reprehensible, and its natural tendency was to prejudice the jury against a man who would be guilty of such conduct, but it certainly did not tend to show that E. Y. Jennings dominated the mind of his wife when she executed her will, and caused her to make a will which represented his own rather than the wish of the testator.

[5] Neither is a wife's will in favor of the husband to be set aside upon evidence that upon one occasion during 36 years of married life he objected to the purchase of some clothing.

[6] The testimony of Grover Jennings that he did not know anything about the will was inadmissible. Under the facts in this case there was nothing suspicious about the circumstance that his mother and father did not see fit to advise him of the execution of their wills. It is certainly not an uncommon thing for parents to execute their wills without taking their children into their confidence.

[7] The testimony of Grover Jennings about Judge Veale was likewise irrelevant. It was calculated and doubtless intended that the inference should be drawn therefrom that proponent purposely refrained from going to a kinsman of Mrs. Jennings to have the wills drawn. There could have been no proper reason for the introduction of this evidence. It was shown by Grover Jennings himself that his mother was not intimate with Judge Veale, and that Jennings' residence was much closer to Ranger, where they went to see Mr. Stubblefield, than it was to Breckenridge, where Judge Veale resided. Mrs. Jennings' malady was a painful one, and her husband is not to be convicted of exercising undue influence because he saw fit to drive 10 miles to Ranger to get Stubblefield to prepare the wills, instead of driving his wife, suffering from a painful malady, a distance of 25 miles to Breckenridge, merely that a distant kinsman of her family should draw the same.

[8, 9] Under the views expressed, all of the testimony of the contestants indicated above was improperly admitted, except evidence of the whipping of the wife, other assaults and unkind language and treatment. It was inadmissible for the reason that it was irrelevant and immaterial to the issue of undue influence, was calculated to prejudice and inflame the mind of the jury against proponent, and induce them to base their verdict upon passion and prejudice rather than upon an unbiased consideration of the issue of undue influence. This alone would necessitate the reversal of this case, but we are of the opinion further that a reversal must also be had upon the ground that the evidence is insufficient to sustain the allegation of undue influence. The burden rested upon the plaintiffs of proving the same, and it must have

appeared that at the time Mrs. Jennings executed her will her action in so doing was dictated by undue influence then exercised by the proponent. Barry v. Graciette, 71 S. W. 309. There is no evidence that E. Y. Jennings did exercise such influence. If there had been any evidence of its exercise at that time, then the evidence of whipping, assaulting, and unkindness upon his part to his wife in the past would have been admissible as corroborating circumstances tending to show the domination of his will over hers, but in the absence of evidence showing the existence of undue influence exercised when the will was executed the other evidence loses its probative force, because there is nothing for it to corroborate. From one viewpoint, evidence of such conduct might be regarded as negativing undue influence, but it is for the jury to draw its own conclusions therefrom. It is unnecessary to dwell upon the evidence in this record which tends to show that Mrs. Jennings' will was executed by her, of her own free will and volition, further than to say that all of the evidence upon the subject tends to show that such was the case. A wide latitude is permissible in the introduction of evidence to show undue influence, and the jury may properly take into consideration all of the facts and circumstances in the case, but where there is no fact or circumstance tending to show directly or indirectly that undue influence has been exercised, and the will executed under the dominating influence of another party, the jury is not at liberty to find against its validity. The will in this case cannot be considered unreasonable. There is an abundance of evidence that it was the free act and deed of Mrs. Jennings, but, as indicated above, it is unnecessary for us to detail and dwell upon this phase of the case, because the question before us is not whether or not there is sufficient evidence to show that it was a valid will, but the question is, Is there any evidence to show that in executing the same Mrs. Jennings was unduly influenced by her husband? In support of the evidence as to the insufficiency of the evidence, see In re Burns' Estate, 52 S. W. 98; Barry v. Graciette, supra; Wetz v. Schneider, 34 Tex. Civ. App. 201, 78 S. W. 394. This court would be well warranted, upon the record here presented, in reversing and rendering this case for the plaintiff in error, but a certain discretion in such matters is vested in the court, and the conclusion is reached that it would be better to remand the case for retrial. The views expressed will sufficiently indicate the action which should be taken by the trial court upon retrial, unless the contestants adduce additional evidence to meet the views here expressed.

Reversed and remanded.