## HAYES ET AL. *v.* HALLE ET AL.

*Wills—Lawful attestation and execution question · for court and not jury—Signature by mark—Finding of undue influence against weight of evidence—Testamentary capacity not in issue and submission to jury error, when—Verdict may be set aside as against weight of evidence, when.*

1. In determining validity of will containing decedent's mark instead of signature, it was duty of court to pass on question whether will was lawfully attested and executed from face of instrument itself and evidence, and submission of question to jury was prejudicial error.
2. Where there was no evidence of statement or act of contestee of will depriving testatrix of free exercise and control of her faculties, and discrimination against contestants was due to unfounded charges of insanity against testatrix, finding of undue influence *held* against weight of evidence.
3. Where contestants failed to attack mentality of decedent, no issue as to her testamentary capacity was raised, though contestee introduced evidence as to decedent's intelligence as bearing on question of undue influence, and hence it was error to submit question to jury.
4. Verdict cannot be set aside on ground that it is against weight of evidence if there is credible evidence to support it, but can be set aside if it appears to reviewing court ·that there has been misapprehension of facts, or that verdict shocks senses.

(Decided October 19, 1925.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. T. J. Ross,* for plaintiff in error.
*Mr. E. C. Osterland,* for defendants in error.

SULLIVAN, J. This cause comes into this court on error proceedings from the court of common

pleas of Cuyahoga county, and in it is sought to set aside the verdict of the jury and the judgment of the court declaring that the paper writing purporting to be the last will and testament of Mary J. Hayes, deceased, is not the last will and testament of the decedent, and as grounds of error for reversal it is charged that the court committed prejudicial error with reference to the admission and rejection of testimony; that opposing counsel was guilty of misconduct; that the court erred in its charge to the jury; and that the verdict is clearly and manifestly against the weight of the evidence.

The contestants, defendants in error here, argue that it is apparent from the record that the issues of want of testamentary capacity, undue influence, and defects in the attestation and execution of the will arose in the trial of the case, and it appears in the charge that the court respected said questions as issues in the case from the pleadings and the evidence. Counsel for the contestee, however, asserts that the issue as to the lawful attestation and execution of the will was not an issue in the case, and that, if it was, it was a question for the court and not the jury. It appears from the charge that the court submitted the question of attestation and execution of the will to the jury, and left it as an issue of fact to be determined by that tribunal.

We do not think that there is any evidence in the record that made this question an issue to be submitted to the jury, but we believe that it was the duty of the court to pass upon the question whether it was duly and lawfully attested and executed from the face of the instrument itself,

together with the evidence in the case. The jury, itself a trier of the facts, is not a competent tribunal to take the will under consideration and determine as one of the issues in the case whether the will conforms to the requirements of the law, especially in a case like the one at bar where a mark appeared instead of the signature of the decedent; and, while the court substantially charged the requirements of the law upon this subject, yet it is not unreasonable, considering all the other facts and circumstances in the record, to presume that the question as to the legal propriety of decedent's mark, instead of her signature, was a subject of discussion by the jury, and, further, it is not unreasonable to believe that there may have been men upon the panel who considered the making of a mark a fatal defect. This incident, when considered in the light of other aspects of the case, may have become a very vital element toward the setting aside of the testator's will in the verdict. From an examination of the record we do not believe that the question as to attestation and execution appeared as an issue to such a legal degree as would warrant the submission of the issue to the jury. In our judgment, under the authorities and under the status of the record, the court should have settled that question for the jury, so that the duty of the jury, as a trier of the facts, would not be enlarged to the extent of a judicial function, and we find as authority for this opinion the case of *Missionary Society of M. E. Church* v. *Ely,* 56 Ohio St., 405, 47 N. E., 537, which holds that whether a writing offered for probate is or is not lawfully executed, attested,

and acknowledged so as to be a valid will, is a question of law, and not of weight of the evidence.

So we think that the court erred in this respect to the prejudice of the contestee for the reason that the evidence did not raise the question to the legal status of an issue, and because it was beyond the province of the jury to settle the legal status of the last will and testament; for, when the question was submitted to the jury as to whether it was a legal document, they became clothed, without authority, with a judicial function, and, according to the charge of the court, it became the duty of the jury to pass as a matter of law upon the legality of the will of decedent.

On the question of undue influence, another question which was submitted to the jury under the pleadings and the evidence, it is well enough for us to understand, before we express ourselves further, what the term "undue influence" is. Accordingly we quote the following authorities by which we must be guided in examining the record to determine whether the verdict is clearly and manifestly against the weight of the evidence:

"The word 'undue' in this connection is not used in the sense lexicographers give to it as one of its popular meanings—'disproportionate,' 'inordinate,' 'unworthy,' as in the phrase 'undue excitement,'  *  *  *  or the like. As a legal phrase, it is used in a stricter sense as denoting something wrong according to a standard of morals which the law enforces in the relations of men, and therefore something legally wrong, something violative of a legal duty—in a word something illegal." *Caughey* v. *Bridenbaugh,* 208 Pa., 414, 57 A., 821.

"It is a rule governing in ascertaining whether

undue influence was exerted over the mind of a testator that the influence was such that it induced the testator to act contrary to his own wishes, and to make a different will from what he would have made if he had been left free to exercise his own wishes and desires according to his own judgment and discretion. * * * No matter how great the fraud may have been, nor how vigorous and active the influence produced upon and exerted over the testator, they would not avail to set aside the will unless they were sufficient to overcome the volition and desire of the testator. * * * Not every influence brought to bear upon the mind of a testator by a beneficiary will be classed as undue influence. Persuasion, entreaty, cajolery, importunity, argument, intercession, and solicitation are permissible, and cannot be held to be undue influence, unless they subverted and overthrew the will of the testator, and caused him to do a thing that he did not desire to do. No more could a will made from mere persuasion, entreaty, or argument, which has been weighed and considered by the testator, and his own mind made up and voluntarily formed, be classed as undue influence, than could the arguments of counsel to a court, which are weighed and considered in arriving at a just conclusion as to the law of the case, be denominated undue influence.'' *Wetz* v. *Schneider*, 34 Tex. Civ. App., 201, 203, 78 S. W., 394, 396.

In the case of *Hughes* v. *Rader*, 183 Mo., 630, 82 S. W., 32, on an issue as to undue influence in the making of a will, the court said that the rule as to undue influence was well settled in the state, and was very aptly stated in *Riley* v. *Sherwood*, 144 Mo., 354, 45 S. W., 1077, as follows:

"In this state the rule is established that such influence must be such as amounts to overpersuasion, coercion, or force, destroying the free agency and will power of the testator. It must not be merely the influence of affection or attachment nor the desire of gratifying the wishes of one beloved and trusted by the testator."

"Undue influence which will invalidate a gift must be something which destroys the free agency of the donor, and substitutes therefor the will of another. What constitutes such undue influence cannot be precisely defined, and each case must be determined upon a consideration of its special facts. The means employed and the extent of the influence are immaterial if their effect be to destroy the free agency of the donor. The ultimate facts of undue influence may, and in many cases can only, be established by circumstantial evidence." *Prescott* v. *Johnson*, 91 Minn., 273, 97 N. W., 891.

We must also bear in mind the decisions in Ohio controlling the attitude of the court toward the status of the evidence in the record upon the question of undue influence. We quote the following authorities:

"The fact that a testator makes an unequal and unfair distribution of his property does not raise a presumption of undue influence." *Bahl* v. *Byal,* 90 Ohio St., 129, 106 N. E., 766.

"The only difference in the burden of proof resting upon a contestant in a will case and the burden resting upon an affirmative side in other civil case is that in a will case he must furnish evidence sufficient to preponderate not only against the evidence offered for the will, but also to preponderate against the presumption arising from

the order of probate and from the will itself."
*McFarland* v. *Clark,* 8 Ohio App., 326, affirmed on
other grounds, *Clark* v. *McFarland,* 99 Ohio St.,
100, 124 N. E., 164.

"The making of a change in a will, which there
is reason to believe was done for reasons satis-
factory to the testator, is not, where standing alone,
a sufficient reason for setting the instrument aside
on the ground of undue influence, notwithstanding
the will as so changed did not, in the opinion of
some, make a fair and reasonable distribution of
the estate of the testator." *Gregg* v. *Moore,* 14
C. C., (N. S.), 570, 23 C. D., 534.

Evidence to the effect that the testator was old
and enfeebled by disease, but was intelligent
and always understood the transactions in which
he was engaged, is insufficient to justify a finding
of lack of testamentary capacity. *Gomien, Exrx.,*
v. *Weidemer,* 27 O. C. A., 177, 29 C. D., 1.

"A will cannot be impeached for undue influence,
unless the influence under which it is made, im-
poses some 'restraint' upon the testator in the
disposition of his property, in accordance with his
own independent wishes and judgment." *Monroe*
v. *Barclay,* 17 Ohio St., 302, 93 Am. Dec., 620.

With these authorities before us, we have re-
viewed the record in the light of the definitions
and the limitations therein laid down, and have
come to the conclusion that the verdict and judg-
ment of the court are clearly and manifestly against
the weight of the evidence upon the issue of
undue influence, for, no matter what the record
shows as to any interest naturally or otherwise
exercised and shown by the contestee as to the
last will and testament in question, there is no

statement or act of the contestee that became effectual to the extent that the decedent was in any manner or degree deprived of the free exercise and control of all her faculties, and it may be said in passing that there is evidence of a very substantial and credible nature, patent throughout the entire record, that at all times and places the decedent was of such an assertive and vigorous character, both mentally and physically, that she insisted at all times that her last will and testament should be of her own make; and it further may be said in passing that it appears from the record that if there was any outside influence that made the decedent discriminate against some of her children in the making of the will it was due to the futile and groundless charge that was made against her by the children discriminated against, when they filed an affidavit of insanity against her when she was undoubtedly, from the record, a woman of sound mind and thoroughly acquainted with all those legal requirements which are necessary in the making of a will. After the examination in probate court, the charge of insanity fell groundless, and every impulse of nature naturally arose like a surge in the heart of decedent and impelled her to assert, after the defeat of her assailants, the supremacy and soundness of her intellect. The charge and trial of insanity, the acquittal, the disgrace and notoriety thereof, are irresistibly connected not only with the making of the will itself, but with the reasons why she made it as she did.

As to the question of testamentary capacity, there was no affirmative attack by the contestants, as appears by the record, against the soundness

of the mind of the decedent, and even though there is evidence in the record proceeding from the side of the contestee, as to an indisputably high standard of intelligence, yet that in and of itself does not raise an issue upon the question of testamentary capacity, because there is no witness in behalf of the contestants who affirmatively attacked the mentality of the decedent, and the issue could not be raised simply because the contestee, in the examination of a witness, in order to show the intelligence of the decedent as bearing upon the question of undue influence, touched upon the question of her soundness of mind; so that whatever evidence there was upon this subject was of an affirmative nature and lacked that negation which is necessary to put a proposition in issue. We think the court, under the state of the evidence, committed error in submitting an issue of this character to the jury, for we do not think that it was warranted from the state of the evidence at the conclusion of the trial. We have examined the evidence in order to ascertain whether upon this other question that was submitted to the jury, to wit, testamentary capacity, the verdict and judgment are clearly and manifestly against the weight of the evidence, and in making this examination of the record we bear in mind the case of *Niemes* v. *Niemes,* 97 Ohio St., 145, 146, 119 N. E., 503, which holds that testamentary capacity exists when the testator has sufficient mind and memory, which is to be determined in four different ways:

First: Did the testator understand the nature of the business? Did decedent understand that she was making her last will and testament?

Second: Did she comprehend the nature and

extent of her property? In other words, did she know what she had in the way of worldly goods?

Third: Did she have in her mind the names and identities of those who had natural claims upon her bounty? In other words, did she know how many children she had, their status and condition, their names, and so forth?

Fourth: Was she able to realize her relation to her sons and daughters?

Upon every one and all of these propositions we find no substantial disparity in the record, and the evidence is overwhelmingly in favor of the conclusion that decedent met, in her testamentary capacity, each and all of these legal requirements. The striking fact in the record is that there is no substantial evidence of any character assailing the testamentary capacity of the decedent.

With this state of the record it would appear that as to attestation, execution, and acknowledgment of the will, and want of testamentary capacity and undue influence, the jury acted under a misapprehension either of the law or of the facts. Else they would not have reached a verdict which tends under the record to shock the senses. Under the authority of our courts in Ohio a verdict shall not be set aside on the ground that it is clearly and manifestly against the weight of the evidence if there is credible evidence to support the verdict, but a verdict shall be set aside if, after weighing all the evidence in the record, it appears to a reviewing court that there has been a misapprehension of facts, or that the verdict is such as to shock the senses.

We have reviewed the other charges of error,

and have come to the conclusion that they are not well founded.

Holding these views, it is our judgment that the verdict is clearly and manifestly against the weight of the evidence and contrary to law, and the judgment of the lower court is therefore reversed, and the cause remanded.

*Judgment reversed and cause remanded.*

LEVINE, P. J., and VICKERY, J., concur.