### IDAR v. UEHLINGER et al.
#### No. 8808.

Court of Civil Appeals of Texas. San Antonio.

April 13, 1932.

Rehearing Denied May 25, 1932.

J. D. Todd and J. D. Todd, Jr., both of Corpus Christi, for plaintiff in error.

F. J. Onzon, E. L. Coleman, and Delmas Givens, all of Corpus Christi, for defendants in error.

COBBS, J.

Defendant in error Aug. Uehlinger filed an application in the county court of Nueces county, Tex., on February 26, 1930, to probate an alleged will (also filing the will) of Clara V. Rosales, deceased, and seeking to have himself appointed independent executor without bond or security, and with no further action in court than to return an inventory and appraisement of the estate of the deceased.

Prior to a hearing upon the application, plaintiff in error, Eduardo Idar, for himself and as representing the blood heirs of decedent, on March 20, 1930, filed a protest against admission of the alleged will to probate, setting up, among other things, invalidity and unconstitutionality of the laws under which such notice or citation was issued and served, as well as the insufficiency in law of the said notice or citation and the service and return of the officer, and alleging also unsoundness and lack of mental capacity on part of the alleged testatrix to make a valid will, and fraud and undue influence on the part of the proponents and others in its alleged execution, and that the same was an unnatural will leaving a large estate to strangers to her blood, and disinheriting her own blood relatives, the plaintiffs, on part of testatrix.

The court overruled all exceptions to the pleading and after considering the same heard the case on its merits, rendered judgment for defendant in error, and appointed Aug. Uehlinger executor without bond or other security.

Plaintiff in error has briefed the case very elaborately, but as no statement of facts was made and filed it is impossible for us to pass upon many of the questions raised and presented.

Plaintiff in error's first proposition claims that special issue No. 1 was a comment on the weight of the evidence. It is impossible for us to pass upon the same without the evidence bearing on the subject; we cannot assume the same was an issue of fact before the jury in the absence of a statement of facts, and in all the cited cases there was a statement of facts. In the case of Wetz v. Schneider, 34 Tex. Civ. App. 201, 78 S. W. 394, 397, Judge Fly, speaking for this court, said: "The false statements must have been made to the testatrix by the beneficiaries under the will, or through their procurement or agency. They cannot be held responsible for the unauthorized statement of any one, no matter how closely connected by ties of blood or marriage."

Plaintiff in error complains at the use of the word "cannot" in the charge, and the use of the words "arguments, persuasions, affection and attachment," which they claim as too strong.

In the case of Patterson v. Lamb, 21 Tex. Civ. App. 512, 52 S. W. 98, 99, it is held: "The fact that the testator was under the general, and even controlling, influence of another person in the conduct of his affairs, will not suffice to invalidate the will, unless that influence was specially exerted upon the testamentary act. Small v. Small, 4 Greenl. [4 Me.] 220, 16 Am. Dec. 253, and authorities cited in note. Judge Redfield, after reviewing the cases decided, says: 'It is obvious that the influence to avoid a will must be such as—First, to destroy the freedom of the testator's will, and thus render his act obviously more the offspring of the will of others than of his; second, that it must be an influence specially directed towards the object of procuring a will in favor of particular parties; third, if any degree of free agency or capacity remained in the testator, so that, when left to himself, he was capable of making a valid will, then the influence which so controls him as to render his making a will of no effect must be such as was intended to mislead him to the extent of making a will essentially contrary to his duty, and it must have proved successful to some extent, certainly.' 1 Redf. Wills, 525. The burden of proving that undue influence operated upon the will in question lies on the party who alleges it."

In Wetz et al. v. Schneider et al., 34 Tex. Civ. App. 201, 78 S. W. 394, 396, it is stated: "As said in Underhill on Wills, § 125: 'His mind must have been hindered and restrained in its actions. And it is not material whether his volition was overcome by threats or fear, or by falsehoods, importunities, or annoyances. If the influence was sufficient to constrain him to do what was against his will, so that his testament speaks the mind of another, and not his own, it is undue, and the will is void. His free agency must have been destroyed by the influence brought to bear upon him, and it is not material how this was done, so long as he was unable to resist through weakness or fear or the desire for peace and quiet.' No matter how great the fraud may have been, nor how vigorous and active the influence produced upon and exerted over the testator, they would not avail to set aside the will unless they were sufficient to overcome the volition and desire of the testator. Patterson v. Lamb, 21 Tex. Civ. App. 512, 52 S. W. 98; Barry v. Graciette (Tex. Civ. App.) 71 S. W. 309. As said in the

last-named case: 'His free agency must have been destroyed by the influence brought to bear upon him. And it is not material how this was done, so long as he was unable to resist, either through weakness or fear or desire for peace and quiet. It must also be kept in mind that the undue influence must have acted directly on the mind of the testator at the time of execution of the will.' Not every influence brought to bear upon the mind of a testator by a beneficiary will be classed as undue influence. Persuasion, entreaty, cajolery, importunity, argument, intercession, and solicitation are permissible, and cannot be held to be undue influence, unless they subverted and overthrew the will of the testator, and caused him to do a thing that he did not desire to do. No more could a will made from mere persuasion, entreaty, or argument, which has been weighed and considered by the testator, and his own mind made up and voluntarily formed, be classed as undue influence, than could the arguments of counsel to a court, which are weighed and considered in arriving at a just conclusion as to the law of the case, be denominated undue influence."

In the case of Holmes v. Houston et al. (Tex. Civ. App.) 241 S. W. 1039, 1051, the court said: That it must appear "that such influence, so far controlled and subverted the testator's mind and will power as to render him unable to resist it."

In the case of Fox v. Bierman et al., 257 S. W. 969, 970, this court upheld the ruling in the case of Simon v. Middleton, 51 Tex. Civ. App. 531, 112 S. W. 441, and quoted therefrom in part as follows:

"Not only was the burden on appellees to establish undue influence, but it devolved upon them to show that it was operating upon the mind of the testator at the time that he executed the will * * * and that the execution of the will was the outcome of an influence amounting to moral coercion, which destroyed his volition, and caused him to make a disposition of his property which he did not wish to make. * * *

"It [undue influence] is an influence which destroys the free agency of this testator, and places him in a position where he is dominated by another, which acted directly on his mind at the very time when he executed the will."

In the case of George B. Brown v. John Mitchell et al., 88 Tex. 350, 31 S. W. 621, 627, 36 L. R. A. 64, the court quoted with approval the following language from a Michigan case (Kempsey v. McGinniss, 21 Mich. 123): "To what extent and in what manner the mind of the testator was affected by the disease, or what was his mental condition, was a question of fact upon which it was competent for the professional witnesses to express their opinions. But what degree of mental capacity is necessary to enable a testator to make a valid will, to what extent and with what degree of perfection he must understand the will and the persons and property affected by it, or to what extent his mind must be impaired to render him incapable, is a question of law exclusively for the court, and with which the witnesses have nothing to do. * * *"

In regard to the charge of misconduct of the jury, there is no statement of facts showing any such evidence, and we cannot discern it in the absence of a statement of facts.

■ The courts have repeatedly held that the burden of proof to establish unsound mind and undue influence is upon the protestants.

■ In regard to the method of posting notices of probate, see article 3334 (as amended by Acts 1929, c. 100, § 2 [Vernon's Ann. Civ. St. art. 3334), and article 3311, of the Revised Statutes. This court cannot take judicial knowledge that the county court did not prescribe the dates of the terms of that court, but will presume to the contrary. In the case of Franks v. Chapman, 61 Tex. 576, Justice Stayton holds that whether or not the probate court had jurisdiction of the case, the district court took and held jurisdiction to probate the will. Marshall v. Stubbs, 48 Tex. Civ. App. 158, 106 S. W. 435; Elwell v. Convention, 76 Tex. 514, 13 S. W. 552.

Because there is no statement of facts filed in this case it is impossible to give a full discussion, such as we should like to make, of all the questions raised, and this applies to the charges too. We deem it important that the judgment be affirmed.