## LONG et al. v. LONG.

### No. 3439.

Court of Civil Appeals of Texas. El Paso.
Nov. 5, 1936.

Rehearing Denied Nov. 25, 1936.

Fred Minor, of Denton and W. F. Bane and Storey, Sanders & Sherrill, all of Dallas, for appellants.

Thompson, Knight, Baker & Harris, of Dallas, for appellee.

WALTHALL, Justice.

On December 8, 1932, appellants, Frank O. Long, W. S. Long, and Charles Edward Long, filed in the probate court of Dallas county, Tex., an application for probate of what they alleged to be the last will and testament of Mrs. Martha I. Long, deceased, in which document appellants were named as executors thereof. Appellee, Frances Mae Long, filed a contest to the application for probate of the document as the last will and testament of Mrs. Martha I. Long, asserting, for reasons stated, that the document tendered as the last will and testament of Mrs. Martha I. Long was not her last will and testament.

On a hearing in the county court the document was there admitted to probate on July 15, 1933; on appeal to the district court the matter was tried de novo, a jury sitting, and resulted in a mistrial. It was tried again, and upon special issue submitted the jury found from the preponderance of the evidence:

1. That Mrs. Martha I. Long, when she signed the will in question on December 12, 1927, had testamentary capacity to execute it.

2. That Mrs. Martha I. Long was caused to sign the will in question through undue influence exerted upon her mind and will by her son, Frank O. Long.

3. That the will was executed under the formalities and witnessed as requested.

The court overruled appellant's motion for judgment, and on the jury's findings en-

tered judgment that the instrument of Mrs. Martha I. Long is not her valid last will and testament and refused its probate, and ordered that the decree be certified to the county court for observance.

Appellant's motion for a new trial was heard and overruled, and this appeal was perfected.

### Opinion.

The document in controversy, to which we will herein refer as the will, was executed by Mrs. Martha I. Long on December 12, 1927. At the time of its execution Mrs. Long was approximately 76 years of age. At the time of her death she was 83 years of age.

Appellee Frances Mae Long was the granddaughter of Mrs. Martha I. Long, being the only daughter of her deceased father, D. Lee Long, one of Martha I. Long's sons, and her mother, Mrs. Grace Long.

We need not refer at length to the evidence of the various witnesses offered as to Mrs. Martha I. Long's testamentary capacity to make a will. The evidence is voluminous and covers some 500 pages of the record.

In view of statements in Craycroft v. Crawford (Tex.Civ.App.) 275 S.W. 124, which we need not quote here, we think to consider the evidence offered on the issue of testamentary capacity though it may have but little, if any, bearing upon the issue of undue influence. The evidence shows, we think, that up to the time of her last illness Mrs. Long was of unusual intelligence, read current newspapers, and magazines, did her own shopping, looked after her flowers and yard, attended to her household duties, signed checks, and in general carried on as a normal person such duties as she could perform. Her attending physician for years said she was a woman of sound mind; she had had pneumonia and some bronchial asthmatic attacks. Appellee testified as to Mrs. Long's physical and mental condition before and after the making of the will, said she was fragile, weighed about 90 or 100 pounds; had attacks of pneumonia from which she never fully recovered and which impaired her physically and mentally, and within about two weeks before the date of the will, had lost, through death, her daughter, Mrs. Parker, who had lived with her and was her mainstay and companion; in the interval from Mrs. Parker's death to the signing of the will Mrs. Long's health was further impaired and aggravated by a serious attack of influenza.

Frank O. Long testified: Was his mother's business manager; for a long time he lived with her, later lived next door or in her immediate neighborhood; made bank deposits for her; looked after her insurance, rendition of her property for taxes and payment of taxes, made out her income tax returns, collected rents; the sale of two parcels of land was handled by Frank O. Long, after consulting with his brothers and sisters; the brokers accounted to him and he was trustee for deferred payments and made the collections, prepared the releases and had them executed and consulted with and paid the attorney; his mother was advised as to the advisability of the two sales; Mrs. Martha I. Long had no safety box in the bank; Frank O. Long did have; after Mrs. Long's death her government bonds totaling $74,000, vendor lien notes totaling $10,000, and other papers and securities were shown to be in Frank O. Long's safety box. Frank O. Long, about three weeks before Mrs. Long signed the will, executed right of way easement to the city of Dallas, without having a power of attorney to do so.

Frank O. Long is shown to have been his mother's business agent, was one of the executors in her will and a beneficiary thereunder; the only member of the family acting in the preparation of the will, apparently the only member of the family acquainted with its contents, was the possessor of the will from its execution until after his mother's death; was the employer of the attorney who wrote the will, advised the attorney as to its desired contents, revised the early drafts of the will.

Mrs. Long's natural heirs were four of her own children living at the time of making the will, viz.: Frank O. Long, Will Long, C. E. Long, and Mrs. Kayser; a granddaughter, appellee, the child of a deceased son (D. Lee Long); and two grandsons, Charles and Ed Parker, sons of Mrs. Parker.

The natural distribution of Mrs. Long's estate would have been into six parcels of equal size, four going to her three sons, and her daughter, one going to her granddaughter, appellee, and one going to her two grandsons, children of Mrs. Parker.

The relationship between Mrs. Long and appellee was close and affectionate. Mrs. Long approved of appellee's musical work, constantly having appellee play for her, constantly inquiring about her musical studies, her teaching vocation, her pupils, recitals,

etc. Mrs. Long possessed a number of appellee's photographs. Appellee made a trip to Europe in 1928, for study and recreation; before going appellee discussed the trip with Mrs. Long. Mrs. Long expressed herself as pleased that she was going. On her return appellee brought to her grandmother a number of gifts. Mrs. Long saved until her death all of appellee's letters written to her during the European trip. Without quoting further, the record does not show a rift of any kind between Mrs. Long and appellee.

The record shows that Frank O. Long was indifferent toward appellee. While Mrs. Long had lived in Dallas since 1920, and Frank Long had lived in Dallas practically all his life, and appellee was a constant and frequent visitor at his mother's home, Frank O. Long testified he did not know what appellee did; did not know she taught music in the Dallas schools, though he had known her all of her life; testified that he had not been in the home of appellee and her mother more recently than four or five years before testifying, and that prior thereto he was in her home possibly once a year; could not recall ever talking to appellee about her teaching; said his mother did not approve of the way appellee had spent the $17,000 distributed to her; that Mrs. Long asked appellee to put the money in government bonds, but that immediately thereafter appellee took a trip to Virginia, which Mrs. Long criticized. These criticisms were made after the distribution of the $17,000 was made to appellee and before the will was signed.

Frank O. Long testified that on more than one occasion his mother criticized appellee about the way she spent the money distributed to her. The record shows, however, that appellee's trip to Europe was made after the will was made. Appellee testified that her grandmother said to her that she was glad she was taking the trip; said that her grandmother never told her to invest the money in government bonds and had she done so, she would have so invested it. Appellee stated how she had invested the money given her.

Frank O. Long testified that his mother told him to have a new will prepared.

The record shows that some years before the will here in question Mrs. Long had signed another will. Frank O. Long had had that will prepared by an attorney of his selection to whom he gave instructions as to its preparation, and apparently without consulting his mother as to its preparation prior to the time it was presented to her for execution. The contents of that will and what became of it is not clear.

The evidence goes into much detail as to what was said by the attorney who prepared the will in question at the time the will was signed by Mrs. Long. The attorney testified that he said to her that he had written a will and come to get it signed; did not recall telling her anything about changes made in the old will in the new, and did not think he did; did not tell her she owned the 90 acres; did not read to her the field notes, but gave the substance of it; would not say we discussed the unsold part of it; the same as to the 20 acres; as to the entire will, witness said: "I read it to her or gave her the substance"; thinks he read it to her, went over the whole will with the exception of descriptions; "told her she was giving 1/12 interest in the Fairmont property to Miss Frances Mae Long;" was not sure that she said anything about the home on Vandelia. In answer to the question, "What part of the will did you read?" the witness answered: "I think I read all except descriptions; I might not have read every word. I am sure I gave the substance, except descriptions in detail, of pieces of property she mentioned."

Under the terms of the will, in controversy, without quoting its verbiage at length, appellee, Miss Frances Mae Long, was given a one-sixth undivided interest in what may remain of a 90-acre tract of land in question and fully described in the will, and a one-sixth interest in the proceeds of the sale of said 90-acre tract; she was also given a one-twelfth interest in certain other lands described in the will.

Appellants submit that the evidence is insufficient to justify the submission to the jury of the issue of undue influence exerted upon the mind of Mrs. Martha I. Long by Frank O. Long which caused her to sign the will in question, and that the court was in error in not granting their motion for an instructed verdict.

The only question presented here for our consideration is whether the evidence is sufficient to show such undue influence in the making of the will as to render the will inoperative.

While we have transcribed but a small portion of the evidence, and mostly of that from appellee's brief upon which she relies to support the jury's finding on the issue of undue influence, and the court's judgment

based on the finding, we have carefully reviewed the entire statement of facts. There is no direct testimony in the record showing the exercise of undue influence by Frank O. Long upon his mother in the matter of executing the will, or in its preparation. Much of the evidence in the record, and in that stated above, has application more to the testamentary capacity of the testatrix, and to the method used in the preparation of the will, and in the formal part of making proof of its execution.

The jury by the verdict determined the issue of testamentary capacity, and no issue is presented here as to the want of formalities in executing or publishing the will.

 The burden of proof was upon contestant to prove by a preponderance of the evidence that the purported will was the result of undue influence exercised upon the testatrix by Frank O. Long; such undue influence cannot be inferred alone from motive or opportunity, but there must be some testimony, direct or circumstantial, to show that undue influence not only existed, but that it was in fact exercised with respect to the making of the will itself. The undue influence which invalidates a will is such, and must be shown to be such, influence as destroys the free agency of the testatrix and places her in a position where she is dominated by another, and such undue influence must act directly on her mind at the time when she executes the will.

Maul v. Williams et al. (Tex.Civ.App.) 88 S.W.(2d) 1087.

In Whitney v. Murrie, 264 S.W. 270, 273, this court said: "All the authorities agree that the issue of undue influence is proved only when the free agency of the testator is supplanted; that is, that the will is made under such suggestion or surrender of the natural freedom of will and action as that it speaks the mind of another. It is not enough that the testator is persuaded by solicitation or argument from disposing of his or her property as he or she previously intended; it must amount to moral coercion. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138; Ater v. Moore (Tex.Civ.App.) 231 S.W. 457; Holmes v. Houston (Tex.Civ. App.) 241 S.W. 1039; Wetz v. Schneider, 34 Tex.Civ.App. 201, 78 S.W. 394; Patterson v. Lamb, 21 Tex.Civ.App. 512, 52 S.W. 98, and the many cases and authorities there used without stating them here, a clear and comprehensive statement of the law as we view it, and in which it is held that to avoid a will on the ground of undue influence, it must appear that the influence was exercised upon the very act of making the will; that the fact that the testator was under the general and even controlling influence of another person in the conduct of his affairs will not suffice to invalidate the will, unless that influence was specially exerted upon the testamentary act."

We have found no evidence in the record in this case, direct or circumstantial, exerted by Frank O. Long or any other person, prior to the writing of the present will, or at the time of the execution of the will, which, in our opinion, amounts to such coercion as to destroy or avoid the will.

All propositions submitted by appellants, and those submitted by appellee on cross-assignment and not discussed, have been considered and are overruled.

The case is reversed and here rendered in favor of appellants.

Reversed and rendered.