**WHITNEY et al. v. MURRIE. (No. 1621.)**

(Court of Civil Appeals of Texas. El Paso. May 8, 1924. Rehearing Denied June 19, 1924.)

1. **Wills ⚖️52(1)—Burden of proving mental incapacity and undue influence is on contestant.**

Burden of proving mental incapacity and undue influence is on contestant.

2. **Wills ⚖️166(1), 316(3)—Submission of issue and finding of undue influence held not justified by evidence.**

Evidence *held* insufficient to sustain jury's finding of, or authorize submission of issue of, undue influence.

3. **Wills ⚖️155(3)—Solicitation or argument dissuading from disposing of property as previously intended insufficient to show undue influence.**

To prove undue influence it must be shown that will was made under such suggestion or surrender of testator's natural freedom of will and action that it speaks mind of another, and it is not enough that he was dissuaded by solicitation or argument from disposing of property as he previously intended.

4. **Wills ⚖️158—Undue influence must have been exercised on very act of making will.**

To avoid will for undue influence it must appear that influence was exercised on very act of making will, and mere fact that testator was under general or even controlling influence of another in conduct of his affairs will not suffice.

5. **Wills ⚖️50—Essentials to validity of will of aged and infirm testatrix, impaired in senses, stated.**

If testatrix knew, when she made will, what she was doing with her property, and directed preparation of will and executed it as prepared of her own free volition, because she desired property to pass at her death to beneficiaries named as directed in will, latter is valid, though she was old and infirm, weakened in energy, and impaired in senses.

6. **Wills ⚖️55(1)—Evidence of mental incapacity held insufficient to justify avoidance of will.**

Evidence *held* insufficient to show that mental condition of testatrix, when will was made, was such as to justify its avoidance.

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Appeal and error ⌾⟹1003—Jury's verdict reversed when so against evidence as to be clearly wrong.**

Appellate courts hesitate to reverse jury's verdict on fact questions, but must do so when convinced that it is so overwhelmingly and manifestly against evidence as to be clearly wrong.

**8. Wills ⌾⟹330(1)—Instruction submitting issue of mental capacity preferable to submission of question whether of unsound mind.**

Instruction submitting issue of mental capacity to make will is preferable to one submitting question whether testatrix was of unsound mind.

**9. Wills ⌾⟹53(5)—Testatrix's husband's will held admissible on issue of insane delusions as to valuable provisions made for contestant.**

In will contest on ground that testatrix was suffering under insane delusion induced by misrepresentations of contestees that valuable provision had been made for contestant by testatrix or her deceased husband, admission of latter's will in evidence held not error.

**10. Wills ⌾⟹53(8), 164(7)—Tabulated statements of testatrix's monthly balances in bank held admissible on issue of mental capacity and undue influence.ʼ**

In will contest, tabulated statements of testatrix's monthly balances in bank held admissible on issues of mental capacity and ability to resist influences surrounding her when she made will.

**11. Wills ⌾⟹400—Admission of certain testimony bearing on undue influence held not reversible error.**

In will ˙ contest, admission of witness' statement as to giving of checks by testatrix to contestee and latter's checking account showing disposition of checks or their proceeds held not reversible error, in absence of showing of such disregard of testatrix's deceased husband's will leaving portion of estate to contestant, as disclosed want of mental soundness; testatrix's condition of mind at time of making will and question of undue influence by contestee being sufficiently presented in tabulated statements of testatrix's monthly balances in bank, while contestee's condition of mind and disposition of checks or proceeds was not involved.

**12. Wills ⌾⟹400—Exclusion of will contestee's testimony on ground of offending statute as to transactions with decedents held not reversible error.**

In will contest on ground of undue influence by contestee, exclusion of latter's testimony, as inhibited by R. S. art. 3690, that she heard testatrix instruct representative of bank to put certain amounts of money to her credit, held not reversible error.

**13. Appeal and error ⌾⟹843(1)—Questions not arising on retrial not considered.**

Questions which may not arise on retrial need not be considered.

Appeal from District Court, Shackelford County; W. R. Ely, Judge.

⌾⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Petition by Robert Gregg Murrie to set aside probate of and annul will of M. A. Gregg, deceased, opposed by Florence J. Whitney and others. Judgment for contestant, and contestees appeal. Reversed and remanded.

*Chas. E. Coombes and M. S. Long,* both of Abilene, *Andrews & Andrews,* of Stamford, and *A. A. Clarke,* of Albany, for appellants.

*R. L. Stennis,* of Dallas, *W. J. Cunningham,* of Abilene, and *J. A. King,* of Albany, for appellee.

WALTHALL, J. On June 9, 1920, an instrument purporting to be the last will and testament of M. A. Gregg, deceased, bearing date the 26th day of July, 1919, and in which E. E. Whitney was named as independent executor, was admitted to probate in the county court of Shackelford county. After the will had been duly probated, and said executor had qualified as such, and returned an inventory, appraisement, and list of claims of said estate, on to wit, the 14th day of February, 1921, appellee, Robert Gregg Murrie, filed in said probate court his petition to set aside the probate of said will and to annul said will, citing appellants, Mrs. Florence Whitney and her husband, E. E. Whitney, Margaret E. Churchill, and her husband, S. J. Churchill, Ernestine E. Vail and her husband, K. B. Vail, Frank Eugene Whitney, Gregg Earl Whitney, and E. E. Whitney, as independent executor under said will, to answer said petition. Charles E. Combs was duly appointed guardian ad litem for Gregg Earl Whitney, a minor without a guardian. The trial in the county court resulted in favor of the contestant, Robert Gregg Murrie, and a decree and order entered setting aside said will and the order of the court probating same, and adjudging that appellee recover his costs, from which decree and order defendants, as contestees of said will, duly prosecuted an appeal to the district court of Shackelford county. The case was there tried with a jury and submitted upon special issues, resulting in a verdict and judgment in favor of contestant, appellee here, from which judgment contestees under the will, appellants here, prosecute this appeal.

On the two issues submitted to the jury under the court's general charge the jury found, first, that the testatrix, Mrs. M. A. Gregg, was of unsound mind on July 26, 1918, when she was to have executed the will in controversy, and, second, that the alleged will of Mrs. M. A. Gregg, of date July 26, 1918, was procured by the undue influence of Mrs. Florence J. Whitney and the other beneficiaries under the will, or some one or more of them.

Some of the undisputed facts as to the relationship of the appellee and appellants to

the testatrix, Mrs. M. A. Gregg, and to each other, as alleged and shown by the record, might be stated here.

Appellee, Dr. Robert Gregg Murrie, plaintiff below, is the son and only surviving child of Mrs. Maggie E. Murrie, deceased, who was a daughter of Mrs. M. A. Gregg, deceased, and Josiah Gregg, deceased. Appellant Mrs. Florence J. Whitney is the daughter of Mrs. M. A. Gregg and Josiah Gregg, and appellants Mrs. Margaret E. Churchill, Mrs. Ernestine E. Vail, Frank Eugene Whitney, and Gregg Earl Whitney are the children of Mrs. Florence J. Whitney and her husband, E. E. Whitney.

Dr. Robert Gregg Murrie and Mrs. Florence J. Whitney are the heirs at law and the only heirs at law of Mrs. M. A. Gregg and Josiah Gregg.

Appellee, plaintiff below, after alleging certain matters not submitted as issues to the jury, and not necessary to state here, alleged in substance and effect that, if Mrs. M. A. Gregg signed said instrument on the 26th day of July, 1918, or attempted to do so, she did not at that time possess sufficient mental capacity to recall the objects of her bounty and to associate the property or interests to be given with the particular beneficiary or beneficiaries, and to know what she desired to do with the property and to understand the transaction involved by the terms of said will, and was not then and there of sound and disposing mind and memory; and that Mrs. M. A. Gregg was influenced to execute said will different from what she desired by the undue influence of Mrs. Florence J. Whitney. To which petition appellants answered by general denial and special denials as to the exercise by any of them of any undue influence, and, further, that on said 26th day of July, 1918, Mrs. M. A. Gregg was of sound mind, and of her own volition executed said will. Mrs. M. A. Gregg died on or about the 16th day of May, 1920.

## Opinion.

The 37 assignments of error and the propositions thereunder relate to the sufficiency of the evidence to carry the case to the jury, the form in which the issues are submitted, the giving and refusing of charges, the admission and rejection of testimony, and the conduct of the court on the trial of the case.

[1, 2] Appellants, under several propositions and in different ways, question the sufficiency of the evidence to raise either the issue of mental capacity of the testatrix to make a will or the issue of procuring the will by undue influence of Mrs. Florence J. Whitney and the other beneficiaries under the will, or any of them. The evidence, covering more than 300 pages of the record, is too voluminous to quote here. We have very carefully read and noted the statements of each of the witnesses who testified in the case, and the opportunity of each to know and observe the condition of mind whether sound or unsound, of the testatrix, Mrs. M. A. Gregg, on the 26th day of July, 1918, at the time of the making of the will; and the opportunity of each of the witnesses to know whether the will of Mrs. M. A. Gregg was procured by the undue influence of the beneficiaries under the will, or any one or more of them, and all the facts and circumstances disclosed by the record in connection with the evidence of the witnesses and the issues involved. The court very properly placed the burden of proof upon appellee, the contestant, upon both of the issues. In our opinion the evidence is wholly insufficient to sustain the finding of the jury on the issue of undue influence of any of the beneficiaries in procuring the will. The issue of undue influence should not have been submitted.

Appellee alleged that at the time of the making of the will Mrs. M. A. Gregg was suffering under an insane delusion induced by misrepresentations of Mrs. Florence J. Whitney and her said children that valuable advancements had been made to, or valuable provisions had been made for him, plaintiff, by Mrs. M. A. Gregg, or Josiah Gregg, or both; and that such advancements or provisions were of such value as to make it necessary for her, Mrs. M. A. Gregg, to leave all of her estate to her other grandchildren, appellants herein, and nothing to plaintiff in order to make a just and equitable distribution of her estate as between plaintiff and her other grandchildren. Plaintiff referred to the fourth paragraph of said will as evidence of such belief or delusion in the mind of Mrs. M. A. Gregg at the time of the making of said will.

The fourth paragraph of the will declares, in substance, that it is not because of a want of love for appellee that no bequest is made to him, but because of her belief that he has heretofore been provided for more liberally than she can provide for her other grandchildren, and that her present disposition of her estate would be but a recognition of her love and affection for her other grandchildren as well, and no want of love for appellee.

L. C. Huskey, brother of Mrs. M. A. Gregg, testified that Mrs. Gregg talked to him quite often about the disposition she wanted to make of her property; that—

"Those conversations were not just a short time before her death. They were farther back. * * * She said she wanted it equally divided between Dr. Murrie and Mrs. Whitney, her other daughter. * * * The last time she made such a statement to me was a year or maybe a year and one-half before her death. * * * I have noticed or observed Mrs. Whitney and Mrs. Gregg together in their respective homes and out at many places. * * * If they got to talking about the will Mrs. Whitney would object to it. Mrs. Whitney would ob-

ject to the will, and she thought that Dr. Murrie should not have an equal share of it; that he had already been amply provided·for. Relative to Mrs. Whitney's manner toward her mother, she seemed to be kind of disappointed, and she would sometimes argue with her mother. She would seem to be kinda angry with her mother. She seemed to be in a state of anger toward her mother ·during those conversations, * * * as though·she thought she had not divided the property right and thought it should be divided different; that she should not think as much of him as of her ·and her children, that is, in the division of the property. * * * During those conversations Mrs. Gregg seemed to be very affectionate toward her, Mrs. Whitney. She seemed to be bothered about things. She would very often give up and not argue so much. Sometimes she would cry."

Without quoting further the verbiage of the testimony of the witness he stated that he was associated with his sister from 1898 to 1920; did not know at that time that Mrs. Gregg had made a will, and did not know until it came into court; Mrs. Gregg said nothing about having made a will, Mrs. Whitney in those conversations would criticize her father's (Josiah Gregg's) will; thought Dr. Murrie had been well provided for; did not think the property should be equally divided. Josiah Gregg's will gave his property to his wife, Mrs. M. A. Gregg, during her life, under certain conditions which we need not state here, further than to remark that Mrs. Gregg took a life estate under the will determinable on the conditions expressed, none of which are here involved, then to be "equally divided share and share alike between my said wife, M. A. Gregg, and my daughter Florence Whitney and my grandson, Robert Gregg Murrie." Appellee contends that the change in mind of Mrs. M. A. Gregg in her expressed desire to divide her property equally between Mrs. Whitney and Dr. Murrie was the fruit of the arguments and undue influence of Mrs. Whitney and the other beneficiaries. None of the evidence so far as we have found in the record shows that any of the beneficiaries, other than Mrs. Whitney, ever said anything to Mrs. Gregg about the division of her property.

[3, 4] All the authorities agree that the issue of undue influence is proved only when the free agency of the·testator is supplanted; that is, that the will is made under such suggestion or surrender of the natural freedom of will and action as that it speaks the mind of another. It is not enough that the testator is persuaded by solicitation or argument from disposing of his or her property as he or she previously intended; it must amount to moral coercion. Scott v. Townsend, 106 Tex. 322, 166 S. W. 1138; Ater v. Moore (Tex. ·Civ. App.) 231 S. W. 457; Holmes v. Houston (Tex. Civ. App.) 241 S. W. 1039; Wetz v. Schneider, 34 Tex. Civ. App. 201, 78 S. W. 394; Patterson v. Lamb,

21 Tex. Civ. App. 512, 52 S. W. 98, and the many cases and authorities there used without stating them here, a clear and comprehensive statement of the law as we view it, and in which it is held that to avoid a will on the ground of undue influence, it must appear that the influence was exercised upon the very act of making the will; that ,the fact that the testator was under the general and even controlling influence of another person in the conduct of his affairs will not suffice to invalidate the will, unless that influence was specially exerted upon· the testamentary act.

We think it fair to presume, under the evidence, that Mrs. M. A. Gregg knew as much about the disposition made by Josiah Gregg of· his estate as did Mrs. Whitney, as she took a life estate under his will. She must have known that Dr. Murrie had not received any of his grandfather's estate under his will prior to her death. There could be no fraud or deception on the part of Mrs. Whitney, or the misstatement of a fact as to what Dr. Murrie was to receive of his grandfather's estate under his will that was not as well known by Mrs. Gregg as by Mrs. Whitney. Mrs. Whitney's comments on her father's will, and what disposition she thought ought to be made by her mother of her own estate, we regard only as expressions of her own view, a legitimate argument, and no more. It is not the influence of what Mrs. Whitney had the lawful right to say at a time remote from the act of making the will, that should avoid the will, but a wrongful coercive statement or act of conduct which unduly influenced the testamentary act itself. Mere persuasions or entreaties will not·invalidate a will on the ground of undue influence. Robinson v. Stuart, 73 Tex. 267, 11 S. W. 275; Stolle v. Kanetzky (Tex. Civ. App.) 259 S. W. 657.

The several times of the conversations testified to by L. C. Huskey and relied upon. by appellee as unduly influencing the maker of the will, apparently occurred a year or more before the will was made. The evidence does not, in our opinion, sustain the jury's finding of undue influence.

[5] If Mrs. M. A. Gregg was of "sound mind" on the 26th day of July, 1918, she had the power under the law to make a last will and testament. The issue submitted was: Was the testatrix of "unsound mind" when she executed the will? But, whatever may be the verbiage of the court in submitting the issue of testamentary capacity, the real question of fact to be determined was as to whether Mrs. M. A. Gregg knew at the time she made the will what she was doing with the property she owned, and did she direct the preparation of the will and execute it as prepared, of her own free volition, and because she desired her property to pass from her at the time of her death to the beneficiaries named just as she had directed and

devised it in the will. As said by Mr. Justice Fly in Salinas v. Garcia (Tex. Civ. App.) 135 S. W. 588, no high degree of intelligence is required of the testator, but if she knows what she desires to do with her property, and remembers those to whom she wishes to give it and so bequeaths it, the will is valid. Brown v. Mitchell, 75 Tex. 9, 12 S. W. 606. The testator may be old and infirm, weakened in energy and impaired in the senses, but, if she responds to the test which is applied to human beings alike in the ordinary affairs of life, the disposition of her property will be respected. It is not for juries nor courts to say how property should be passed by will. They can do no more than see that the testator's mentality meets the law's tests. As said by the great Chancellor Kent in Van Alst v. Hunter, 5 Johns Ch. (N. Y.) 148:

"The control which the law still gives to a man over the disposal of his property, is one of the most efficient means which he has in protracted life to command the attentions due to his infirmities. The will of such an aged man ought to be regarded with great tenderness."

[6] It will be impossible in the short space an opinion should cover to quote, or even comment upon, the testimony of each of the 30 or more witnesses who testified at great length in the case, many of them relatives and most of them lifelong friends and acquaintances of Mrs. M. A. Gregg, and each necessarily going into much detail over a long period of time of the facts and circumstances from which the one conclusion is arrived at in the opinion of the witness as to the mental condition of Mrs. Gregg at the time or times of the observation of the witness. No witness spoke as an expert; most of the facts and circumstances detailed from which the conclusions of soundness or unsoundness of mind are stated occurred run through a series of years and remote in time from the making of the will in question, and yet the fact is uncontradicted that Mrs. M. A. Gregg, all through the years after the death of her husband, was in sole possession and control of her large estate, and, so far as it appears from the record, managing it successfully, caring for herself, both in her own home and home affairs, and when in the home of her friends and relatives, and going on long distances to other states accompanied by another in her care. To us no fact or circumstance is detailed by any witness from which a conclusion could safely be reached that Mrs. M. A. Gregg, at any time, was of unsound mind. During the series of years, and at the very time some of the witnesses concluded that her mind was unsound, other witnesses with equal opportunity to observe and know testify that in their opinion she was of sound mind. Some of the witnesses testified that she had an unusually bright mind. The burden was

upon the contestant of her will to show by a preponderance of the evidence her want of mental capacity at the time she made the will to know and understand what she was doing and the effect of her act in making her will.

Mrs. Gregg's will was written by Judge W. T. Andrews, and was witnessed by Miss Mayme Cullum; both of them testified on the trial. Both of them were friends of Mrs. Gregg of many years. Judge Andrews testified that a year or more before the will was written Mrs. Gregg consulted with him with reference to the execution of her will, and asked him to construe her husband's will, and she then stated to him the disposition she wanted to make of her property. After making such explanations of her husband's will, and that the property of the entire estate was community property, Judge Andrews testified that Mrs. Gregg then made a detailed statement as to what each of the grandchildren would receive under her husband's will and her will, which we need not state. Mrs. Gregg did not then make her will. He further testified that on the day the will was made Mrs. Gregg told him the way she wanted it written; she went over the matter of the disposition she desired to make of the property, and that "she went over that question identically as she had at the preceding conference"; that she returned to the office later when the will was read and explained to her. The will was executed in his presence, and in the presence of Miss Mayme Cullum and J. A. Sparks. Judge Andrews said that Mrs. Gregg wanted inserted the fourth paragraph of the will as above stated, so that Dr. Murrie would not question why he was not a beneficiary in the will; that he would take one-half of his granfather's estate, and that would be a larger share than there would be for each of the four Whitney children; that Dr. Murrie would take four-sixteenths of the whole estate; and that the disposition she wanted to make would give the Whitney children each three-sixteenths of the whole estate; that in talking with him she used the above fractions. Judge Andrews further testified that from his years of acquaintance with Mrs. Gregg and the conversations he had with her he would say she was of sound mind. He thought her mind was perfectly normal. He talked with her about her family and matters in general, and discussed early days, and how things had changed.

Miss Mayme Cullum testified: She had known Mrs. Gregg some 25 years. Had witnessed her will. Stated the facts of the making of the will. Thought that at the time Mrs. Gregg signed the will "she was of perfectly sound mind." The examinations of Judge Andrews and Miss Cullum, both on direct and cross, were extensive, and we state their evidence briefly, and state it because they

are the only witnesses who testified as to the facts and the mental condition of Mrs. Gregg at the very time of making the will.

We have concluded from a most careful examination and consideration of all the evidence that the appellees have not met the burden of showing that Mrs. Gregg at the time of making the will was of such condition of mind that the will should be voided, and for that reason the case must be reversed and remanded. See Milner v. Sims (Tex. Civ. App.) 171 S. W. 784; Vaughn v. Malone (Tex. Civ. App.) 211 S. W. 292.

[7] We, like all appellate courts, hesitate to reverse the verdict of a jury on questions of fact, but we feel it to be our legal duty to do so when convinced as we are that the verdict is so overwhelmingly and manifestly against the evidence as to be clearly wrong. Holmes v. Houston (Tex. Civ. App.) 241 S. W. 1039; Patrick v. Smith, 90 Tex. 267, 38 S. W. 17; Stevens v. Masterson, Dec'd, 90 Tex. 417, 39 S. W. 292; Wetz v. Schneider, 34 Tex. Civ. App. 201, 78 S. W. 394, where it is said on the motion for rehearing that, where there is no evidence to sustain a judgment, the Court of Civil Appeals may render the judgment, but where the evidence is conflicting, but a strong preponderance is against the judgment, the proper disposition is to reverse and remand.

In view of another trial we think it not amiss to make some brief observations on some of the other propositions.

[8] We are of the opinion that the terms "unsound mind" is of such variable significance that its value in a given case depends upon the relation it bears to the particular person in connection with the particular act under inquiry. We think the requested charge better embodies the correct proposition of law called forth by the evidence. We do not mean to say, however, that the charge as given presents reversible error, but we think a jury could better know how to apply an instruction submitting the issue of mental capacity to make a will rather than whether she was of unsound mind. We are inclined to think the charge as given requires a greater degree of intelligence than is required by law.

[9] We think it was not error to admit in evidence the will of Josiah Gregg, as insisted by appellants.

[10] We think it was not error to admit in evidence the tabulated statements of monthly balances of Mrs. Gregg in the bank. Acts of business relative to her estate, the manner and character of disposition made by her of her property, whether before or after the making of the will, are importanat facts to be considered by the court and jury in determining the mental condition of Mrs. Gregg where they bear upon that issue, and in determining her mental condition in ena-

bling her to resist or in impelling her to yield to the influences surrounding her at the time she made the will, and we have considered the statements, and all the facts and circumstances surrounding the several transactions, so far as the record discloses them, in passing upon the sufficiency of the evidence to sustain the findings of the jury on the issues of the mental condition of Mrs. Gregg, and undue influence of Mrs. Whitney in the making of the will. The case of Michon v. Ayalla, 84 Tex. 685, 19 S. W. 878, sustains appellee's contention in the introduction of that testimony.

[11] We think, however, the statement of Mr. Joe B. Matthews and the checking account of Mrs. Whitney with the bank would not seem to come under the rule above stated. We are not prepared to say, however, that the admission of the statement of the witness and said checking account of Mrs. Whitney, if error, constitutes reversible error. It seems to us that the giving of the check by Mrs. Gregg occurring in the account of Mrs. Whitney and the circumstances of giving them could be considered only in determining the condition of mind of Mrs. Gregg at the time of making the will and the question of undue influence upon her by Mrs. Whitney, and such consideration is sufficiently presented in the above tabulated statement of Mrs. Gregg. It is not made to appear that the giving of the checks nor the amount of them shows such disregard of the will of Josiah Gregg in leaving a portion of his estate to Dr. Murrie, subject to the life estate of Mrs. Gregg, as discloses a want of mental soundness of mind of Mrs. Gregg. The reasons or purposes in giving the checks are not sufficiently disclosed to justify such conclusion. The property, and money were Mrs. Gregg's, and she had the right of disposition of both, and such evidence could have application only to her mental condition at the time of making the will. Mrs. Whitney's condition of mind is not involved in the issues here, nor is the disposition she made of the checks, nor their proceeds. We think we need not further pass upon that issue at this time.

[12, 13] Mrs. Whitney offered to testify that she heard Mrs. Gregg instruct Joe B. Matthews, representing the bank, to put certain amounts of money to her credit, and the court excluded the evidence as being inhibited by article 3690, Revised Statutes. Without going into extended analysis of the question presented, we will content ourselves by saying the exclusion of the evidence does not present reversible error. Other questions are presented but we think they might not arise on another trial.

For reasons stated, the case is reversed and remanded.