**PICKERING v. HARRIS.** (No. 1290—5357.).

Commission of Appeals of Texas, Section A.
Jan. 29, 1930.

A. P. Park, A. P. Dohoney, and Otto S. Perfect, all of Paris, for plaintiff in error.

Beauchamp & Lawrence, of Paris, for defendant in error.

CRITZ, J. This suit was filed by C. M. Pickering, Sr., hereafter designated plaintiff, against Myrtle Harris and her husband, hereafter designated defendant, to cancel a deed from the plaintiff to the defendant Myrtle Harris, and recover title and possession of 145.84 acres of land in Lamar county, Tex., on the ground of mental incapacity on the part of the plaintiff to execute the deed. Trial in the district court with a jury on one special issue resulted in a verdict and judgment for the defendant. Plaintiff appealed to the Court of Civil Appeals for the Sixth District at Texarkana, which court affirmed the judgment of the District Court. 12 S.W.(2d) 686. The case is now before the Supreme Court on writ of error granted on application of the plaintiff.

The one question submitted to the jury by the trial court and the answer thereto are as follows:

"Question No. 1. At the time of the execution of the deed in controversy, on August 6th, 1920, by C. M. Pickering to Henry Pickering was the said C. M. Pickering mentally competent, as mental competency is explained above, to execute said deed? Answer yes or no as you may find. Answer: Yes."

The Court of Civil Appeals has made a very fair statement of the issues before us for decision, and we therefore copy the following from the opinion of that court:

"The preponderance of the evidence at the trial indicated appellant was of unsound mind at the time he executed the deed. The real controversy between the parties was (it seems) as to whether the unsoundness of appellant's mind was such as to entitle him to avoid the deed on the ground that he lacked mental capacity to make it. Over appellant's objection on the ground it was the opinion and conclusion of witnesses as to a mixed question of law and fact involving the ultimate issue in the case, the court permitted

appellant's wife, after she had testified that the deed in question was one of eight made at the same time by her and appellant to their children in conformity to appellant's suggestion that they make same, to testify further that in her opinion appellant at the time he executed the deeds 'understood the nature and extent of his property,' understood he 'was transferring same,' and understood 'the consideration for which the transfer was made'; permitted the witness R. H. Young to testify that in his opinion appellant at said time 'had mental capacity sufficient to understand the nature and extent of the transaction in which he was engaged in signing away his property to his children'; permitted the witness Grover Pickering to testify that in his opinion appellant at the time he executed the deed 'knew the nature and extent of the property owned by him' and 'had mental capacity to understand the nature and extent of that transaction'; permitted witness Dr. George F. Powell, testifying as an expert, to say in reply to a hypothetical question put to him that in his opinion, on the facts as stated in the question, appellant 'did have sufficient mental capacity to understand the nature and extent of the transaction, and that he did have will power to refuse to sign the deed if he did not want to do so'; and permitted other witnesses to give like testimony. The assignments attacking as erroneous the action of the trial court in admitting the testimony indicated present the principal question on the appeal.

"Appellant insists his contention that it was error to admit the testimony as evidence over his objection, on the ground urged to it, is supported by the holding of the Supreme Court in Brown v. Mitchell, 88 Tex. 350, 31 S. W. 621, 36 L. R. A. 64, decided in 1895, and cases following it; while appellees insist that their contention to the contrary is supported by the holding in said case of Brown v. Mitchell, and also by the holding of the Supreme Court in Scalf v. Collin County, 80 Tex. 514, 16 S. W. 314, decided in 1891, and cases following it."

As will appear from the foregoing statement made by the Court of Civil Appeals and the one question propounded to the jury, the vital issue to be decided in the case at bar is: ▮ Can a witness in a case involving the mental capacity of a person to execute an instrument give his opinion as to the mental capacity of such person when the answer embraces the very issue being tried, and to be decided by the jury; and does the testimony admitted in this case violate the rule that a witness cannot testify to a legal conclusion?

It is contended by the defendant that the evidence shown to have been admitted in this case is competent under the rule announced by our Supreme Court in Scalf v. Collin County, 80 Tex. 514, 16 S. W. 314, 315. In other words, it is contended by the defendants that under the holding in the Scalf Case the evidence is permissible, and does not call for an opinion of a witness involving a legal conclusion.

It is contended by plaintiff that the rule announced in Scalf v. Collin County, supra, is overruled by our Supreme Court in the later case of Brown v. Mitchell, 88 Tex. 350, 31 S. W. 621, 624, 36 L. R. A. 64.

In Scalf v. Collin County, it is shown that a deed from one Lucretia James, deceased, to Collin county, Tex., was sought to be annulled, and the property therein conveyed recovered by those claiming to be the heirs of Lucretia James, on the ground of mental incapacity on the part of the grantor to execute the deed at the time it was signed. During the trial the county called several witnesses, some of them experts, and some not, and asked each witness certain preliminary questions touching their opportunities to observe Lucretia James, etc., and touching her sanity and mental condition, etc., after which counsel for the county were permitted to ask each witness the following question:

"In your opinion when you saw the said Lucretia James, did she have mental capacity sufficient to understand the nature and effect of such deed?"

Each of the witnesses answered the question: "In my opinion she did have."

The above question was objected to by the plaintiffs on the ground that the witness was not competent under the law to state an opinion on the question, and because the question embraced the very issue to be passed upon and determined by the jury.

The Supreme Court, in an opinion by Associate Justice Henry, holds as follows in regard to the admissibility of the above evidence.

"When the issue is one upon which the witness may properly state his opinion, he may do so, notwithstanding his answer embraces the very issue on trial. The conclusion of the witness is then testified to, as any other fact to be considered by the jury, for what they may believe it to be worth. In many cases witnesses may testify to the existence of the very fact to be found by the jury. The right to express an opinion includes the right to give it as to the degree or extent of the mental infirmity, and to apply it to the particular matter in controversy. We cannot agree with the appellants in the distinction that they seek to make in this respect."

If the holding of the Supreme Court in the Scalf Case is still the rule of evidence in this state, and has never been overruled by our Supreme Court, then the evidence under consideration in the case at bar is within the rule and admissible.

However, in our opinion, the above-quoted holding in the Scalf Case is clearly overruled

by the Supreme Court in the later case of Brown v. Mitchell, supra.

In Brown v. Mitchell it is shown that Lizzie Brown executed a will, giving all of her property to her surviving husband, and afterwards died, and the will was duly probated. · Later, suit was brought by those claiming to be the heirs of Lizzie Brown to set aside the probate of the will because of the alleged fact that she was not of sound mind, and did not have mental capacity to make the will at the time it was executed.

The opinion then shows:

"The interrogatory propounded to Mrs. Livingston, and her answer thereto, as found by the court of civil appeals, will fairly present the question as to both witnesses. The interrogatory was as follows: 'From what you saw and observed of Mrs. Lizzie Brown, deceased, her talk and actions, and her mental and physical condition during the last ten or twelve days of her illness and at the time of the execution of the said instrument of writing, do you think that she had sufficient mental capacity to declare her last will and testament, and dispose of her property? A. I do not think that she was capable of making her will. All day she had been out of her head, talking about dead babies, and asking if they were putting them on ice, and if the hearse had come. We dressed her before she signed the will. She was very weak, and we had to lift her up.' "

In passing upon the admissibility of the question and answer in Brown v. Mitchell, the Supreme Court, speaking through Judge Brown, condemns the evidence on the ground, principally, that it called for a legal conclusion. In passing upon the question, Judge Brown reviews the authorities, both of this state and generally, at great length, but for some reason does not mention or discuss the Scalf Case. However, the holding in the Brown Case does overrule the holding in the Scalf Case as effectually as though it had been done specifically. In fact, we think the question and answer held proper by Judge Henry in the Scalf Case, is more vicious and more clearly violates the rule of law announced by Judge Brown in the Brown Case than the question and answer directly passed on in that case.

In the Scalf Case it was held proper to ask the witness if in his opinion a party making a deed had mental capacity sufficient to understand the nature and effect of such deed. That was the very issue being tried in that case. In the Brown Case it was held improper to ask a witness if a person had sufficient mental capacity to declare her last will and testament. The only difference we can draw between the two questions is that the former calls for the opinion of the witness as to the mental capacity of the person whose sanity is questioned in the suit to make the particular instrument sought to be set aside in that case, while the latter case calls for the opinion of the witness along the same lines as the former, but touching the mental capacity to make such an instrument in general. If the evidence is inadmissible in the latter instance, because it permits a witness to give a legal opinion, it is also inadmissible in the first instance for the same reason. Also the question and answer in the Scalf Case is more to be condemned than the one in the Brown Case, because it not only calls for a legal conclusion, but, in addition, permits the witness to decide for the jury the ultimate fact being tried.

While Judge Brown, as above stated, does not discuss the Scalf Case, we think he does discuss the rule of evidence involved in that case, and in the case at bar, and that the effect of his holding is to condemn the question and answer admitted by the trial court in the Scalf Case and the questions and answers in the case at bar in the following language:

"This question and answer present for our consideration the proposition of law, can a witness, after giving the facts, state his or her opinion as to the legal capacity of a person to make a will? Upon this question there is much apparent conflict of authority, and considerable confusion, arising out of a want of clear and precise statement of the question to be decided in each case.

"In our supreme court three cases have been decided bearing upon this question, upon which the defendants in error rely to support the ruling of the court in admitting this testimony.

"Garrison v. Blanton, 48 Tex. 299, is the leading case in our state upon this question. Chief Justice Roberts wrote the opinion, in which he discussed the question before the court at greater length and with more care than has been done in the subsequent cases. We have not been able to find the original record, so as to determine the exact question before the court, but from an examination of the opinion of the eminent jurist who prepared it we conclude that the point now before this court was not in the mind of Judge Roberts or the court in the determination of that case. After detailing the facts as stated by the different witnesses, Judge Roberts says: 'We cannot say in this case that there was a want of sufficient evidence to sustain the verdict of the jury as to her want of capacity. The witnesses gave their opinions that she had not the mental capacity to make a will. It was their conclusion from her appearance, and from the concurring facts detailed by them, that entered into the formation of their opinion, as it is styled. It is not thought material whether the witnesses detailed the describable facts upon which their conclusion was founded before or after the expression of their opinions. Had they detailed them before, it would

hardly have fallen within the province of the judge to have excluded their opinions, because he did not either understand the force of the facts detailed to establish their conclusion, or did not fully agree with them in their conclusions from the facts detailed by them.'

"That learned judge then proceeds to cite an instance in which the witness was allowed to give his opinion as to the question of insanity, citing Thomas v. State, 40 Tex. 64. Also a case in which the witness gave his opinion as to the incapacity of a party to make a contract on account of drunkenness, citing Reynolds v. Dechaums, 24 Tex. 174 [76 Am. Dec. 101]. This is the full discussion of the question as embodied in that opinion.

"It appears to us, from an examination of this case, that the two leading questions in the mind of the judge were the sufficiency of the evidence, and the necessity for the witnesses to detail the facts before they stated their conclusions. It does not appear that any objection to the legal capacity of the testatrix being passed upon by the witnesses in the expressions of their opinions was in the mind of the court. The discussion of such a question by that learned judge would have assumed a very different form and scope of investigation to that which appears in the opinion written by him. The fact that he reasons from the analogy of a witness stating his opinion as to insanity is another proof that this proposition was not in his mind, because an opinion as to sanity or insanity does not express a legal conclusion, but is simply an opinion as to a mental condition, which is allowed in this class of cases by nearly all courts."

We here call special attention to the following expression used by Judge Brown in the part of his opinion above quoted:

"It does not appear that any objection to the legal capacity of the testatrix being passed upon by the witnesses in the expressions of their opinions was in the mind of the court. The discussion of such a question by that learned judge would have assumed a very different form and scope of investigation to that which appears in the opinion written by him. The fact that he reasons from the analogy of a witness stating his opinion as to insanity is another proof that this proposition was not in his mind, because an opinion as to sanity or insanity does not express a legal conclusion, but is simply an opinion as to a mental condition, which is allowed in this class of cases by nearly all courts."

Judge Brown in the Brown Case then proceeds to further discuss the question in language which thoroughly condemns the evidence considered in the case at bar and in the Scalf Case. We quote the following:

"But when we consider the mode of trial in our courts, wherein questions of fact only are submitted to a jury, under the instruction of the court, it becomes important to observe the distinction between the expression of an opinion as to the mental condition of the party and his legal capacity. By observing this distinction much of the confusion and apparent conflict in the authorities may be reconciled."

Further, Judge Brown in the Brown Case leaves no doubt with reference to his holding by the use of the following language:

"It is important to keep before us in the discussion of this question the distinction between opinions of witnesses upon a mental condition, as sanity or insanity and the like, which are allowed by nearly all the authorities, and such opinions when directed to the question of legal capacity to perform the act in question."

Here Judge Brown clearly approves the right to have the witness express an opinion as to the mental condition of the person executing the instrument, but condemns any testimony which attempts to have the witness give an opinion as to the legal capacity of such person to perform the act in question.

We think that to permit witnesses to testify to the matters shown in this record, and set out in the part of the opinion of the Court of Civil Appeals first above quoted, amounted in law to asking the witness if the plaintiff had mental capacity to execute the deed in question. Such questions went further than permitting the witnesses to give their opinions upon the mental condition of the plaintiff, and allowed the witness, in effect, to express an opinion as to the legal capacity of the plaintiff to make the deed. The questions therefore are to be condemned for two reasons: (a) They called for legal conclusions; and (b) invaded the province of the jury.

In the case at bar the Court of Civil Appeals itself very correctly holds that Scalf v. Collin County is overruled by Brown v. Mitchell. In this particular we approve the following language of the Court of Civil Appeals:

"While Scalf v. Collin County was not specifically mentioned in the opinion of the court in Brown v. Mitchell, we think it must be regarded as one of the cases the court had in mind when, in the concluding part of said opinion, it said:

"'We believe that, in so far as the former decisions of this court may be understood as holding that this testimony was competent and admissible, over the objection that it expressed a legal conclusion, they are not supported by sound authority, nor sustained by correct legal principles, and we are constrained to overrule those cases, in so far as they may be so understood.'"

The Court of Civil Appeals, in the case at bar, then proceeds to hold in effect that the evidence admitted in this case does not violate the rule in Brown v. Mitchell because

the witnesses did not state in so many words that plaintiff had sufficient mental capacity to execute the deed in question; and that the opinions they did state were not as to the existence of the ultimate fact to be found by the jury, but were as to the existence of other facts from which the existence of the ultimate fact might be deduced.

We cannot approve this holding. In our opinion, there is no difference between permitting a witness to testify to a number of legal conclusions the sum total of which make up the ultimate fact to be decided, and permitting such witness to testify to the ultimate fact to begin with. The testimony here under consideration certainly called for testimony on a number of legal conclusions, the sum total of which made up the one ultimate issue submitted to the jury.

For the reasons stated, we recommend that the judgments of the Court of Civil Appeals and of the district court be both reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.