**CARDINAL v. CARDINAL et al.**

No. 5050.

Court of Civil Appeals of Texas. Amarillo.
July 3, 1939.

Rehearing Denied Sept. 11, 1939.

Clark M. Mullican, G. H. Nelson, and Chas. D. Mathews, all of Lubbock, and L. G. Mathews, of Floydada, for appellant.

Kenneth Bain, of Floydada, and Griffin & Morehead, of Plainview, for appellees.

STOKES, Justice.

On the 24th of December, 1931, R. Cardinal, who was then 87 years of age, and his wife conveyed to their son, Louis Cardinal, the appellant herein, 492.2 acres of land located in Floyd County, for the expressed consideration of love and affection. The deed was acknowledged before a notary public and was immediately filed in the clerk's office and recorded in the deed records of the county. Mrs. R. Cardinal, the mother, died December 8, 1936, and on the 27th of December, 1937, this suit was filed

by R. Cardinal, appearing by next friend, A. R. Cardinal, joined by Nelda Boudreau and her husband, Irene Maxwell and her husband, Ida Comeau and her husband, Emma L'Ecuyer and her husband, daughters of R. Cardinal and his deceased wife, and Peter Cardinal, T. J. Cardinal, A. R. Cardinal, Raphael Cardinal, and Neff Cardinal, sons of R. Cardinal and his deceased wife, and Aurellia Groth, Ida Eickholt and Irene Conley, granddaughters of R. Cardinal and his deceased wife, against Louis Cardinal and A. G. Cardinal. A. G. Cardinal and his wife were made parties defendant to the suit because, it was alleged, they were necessary parties and had refused to join as plaintiffs. They filed a disclaimer and were discharged thereon, hence it will not be necessary further to mention them ·in connection with the appeal.

It was alleged that R. Cardinal, at the time the petition was filed, was mentally unfit to prosecute the suit; that he had no guardian or legal representative and, for that reason, he was appearing by his next friend, A. R. Cardinal. The petition is lengthy and as there is no controversy over the pleadings, we shall state merely that the purpose of the suit was to cancel the deed of December 24, 1931, on the grounds that at the time of its execution the grantor, R. Cardinal, was of unsound mind and mentally incapable of understanding the transaction involved or the nature and consequences of his act in executing the deed. Appellees prayed for cancellation of the deed and that the children and grandchildren be decreed such interest and title therein as they may be entitled to as the heirs of their deceased ancestor, Mrs. R. Cardinal.

Appellant answered by general denial, plea of not guilty, and other special pleas necessary to answer allegations of the petition, the details of all of which are not material here.

The case was tried before a jury and submitted upon two special issues, in answer to which the jury found, first, that at the time of executing the deed of December 24, 1931, R. Cardinal did not have sufficient mental capacity to understand the nature and effect of his acts in executing the same and, secondly, that such mental condition was continuous from the date of the deed to the filing of this suit. Based upon the verdict, the court, on the 23rd of May, 1938, entered judgment in favor of appellees, plaintiffs below, cancelling the deed; making adjustments of the title in consequence of the death of Mrs. Cardinal and casting appellant in the costs. Appellant duly excepted to the judgment and, his motion for a new trial being overruled, he gave notice of appeal and the case is now before us for review.

Appellant contends that the verdict and judgment are erroneous and should be reversed, first, because the evidence was not sufficient to support the verdict of the jury. Secondly, he assigns material and reversible error of the court in admitting testimony involving opinions and conclusions of some of the witnesses in reference to the mental capacity of R. Cardinal. Thirdly, refusal of the court to make provisions in the judgment reimbursing him for payments of money made by him upon indebtedness and liens on the land, and, fourthly, error in overruling his motion for a new trial based upon the ground of newly discovered evidence.

The controlling issue in the case is made by appellant's first contention which is presented under the 1st to 6th assignments of error in which he attacks the sufficiency of the evidence to support the finding of the jury to the effect that the grantor, R. Cardinal, did not have sufficient mental capacity to know and understand the nature and consequences of his act in executing the deed of December 24, 1931, in which the tract of land was conveyed to him. The record shows that all of the parties to the litigation except the three granddaughters were the children of R. Cardinal and his deceased wife, Louise, and that the deceased mother of the three grandchildren was their daughter. All of the children had reached maturity, married and left the parental home except appellant, who remained at home with his parents, and had reached, or slightly passed, middle age. It is shown that during all of the time up to the year 1931, R. Cardinal managed and controlled his affairs, including the farm, and all business transactions that arose in connection with. it; that his wife died in 1936 at the age of 79 years and he was 87 years of age when the deed was executed. The record further shows that he was a man of strong will but that during the years immediately preceding the execution of the deed, his mind had begun to fail and his physical strength had perceptibly weakened. The principal part of the testimony concerning his mental capacity at the time he executed the deed ·was given by two

witnesses. Mrs. John W. Maxwell, one of the appellees, testified she had lived in Floyd County since 1915 and lived with her parents until she married in 1921. Her husband died in 1922 and she returned and lived with them until 1929, when she again married and has since lived in the town of Floydada. Her parents lived on the farm but she saw them at least once a week. She said that in 1930 she noticed her father was not normal; that he would ask about her children, such questions as "Whose children are these?" and "Are these your children?"; "Is that your baby?"; "Are these little girls yours?". She said that her father was easily lost; that in 1930 he was at her house and started to town; that after a short time he was back at the house and she remarked to him that she thought he had gone to town. She said he became somewhat confused and that she had her little girl go with him a portion of the distance and, after being directed a short distance, he then knew the way and went to town alone. Upon being asked, from her observations and knowledge of her father's actions and conduct, to state to the jury whether or not in 1931 her father had sufficient mental capacity to appreciate the nature and consequence of his act in making the deed, she said she did not think he did because he had an awful poor memory; that his memory had been getting worse and that it had continued to get worse until the day of the trial. Some objections were made to the nature of the questions asked and the answers given by the witness, after which she was again asked if, in her opinion, her father was capable of knowing the consequences of his acts in 1930, which was the year prior to the time the deed was executed. Her answer was: "Why, he was too forgetful." She said that her father was not insane; that neither she nor anyone else had ever said he was; that she was just getting at the conclusion that he was very forgetful.

Mrs. E. J. Baudreau, another one of appellees and a daughter of R. Cardinal, testified that she had lived in Oklahoma since 1911; that she visited her parents in 1929 and that her father, at that time, was nervous and would sleep a great deal of the time; that he would sleep all morning, get up for dinner, and then go back and sleep until about four o'clock in the afternoon. She said he did that almost every day during the three weeks visit which she made with her parents in that year. This witness said she returned for another visit in October, 1931, and that when her father first saw her he did not know her and did not know her children from one time to another; that when he would go out of the house and return he would ask whose children they were. She testified further that her father had been living at her home in Oklahoma during the year immediately preceding the trial and that he had executed and delivered to her a deed to fifty acres of land in Oklahoma owned by him and which she was claiming as her property because her father had conveyed it to her. She said she supposed he knew what he was doing when he conveyed it to her.

Mrs. A. R. Cardinal, wife of one of the appellees and a daughter-in-law of R. Cardinal, testified that she lived at Floydada and had visited in her father-in-law's home à great deal during the years 1929, 1930 and 1931. She said that when she would go out there R. Cardinal would be asleep and would sleep until noon; that after the noon meal he would go back to sleep and they would awaken him about four o'clock in the afternoon. She said that when they would awaken him he would start walking with a fly swatter in his hand and when he would go out into the yard he would take the fly swatter with him and that he was continually killing flies, bugs and insects with the fly swatter. She said he was nervous and seemed unable to remain quiet; that he was forgetful and would not know her children when she would visit at the home, but would ask them: "Whose girl are you?" and "What is your name?" and "Is that your child?". She testified further that a friend of R. Cardinal lived just across the street from her home at Floydada and, although Mr. Cardinal had visited this friend many times, he seemed unable to remember who lived in the friend's house; that frequently he would ask whose house it was and other similar questions; that he would talk with anyone but he would forget the subject of the conversation as soon as it ceased. That he would go with any one who asked him and was as easily lead by one person as another. This witness testified, however, that "when he talks, he talks with sense; but he forgets when it is over." Upon being asked whether or not he knew what he was doing at the time of doing it though he might forget it later she said: "Yes, but he will do what you tell him to." She said the only time she had an opportunity to observe Mr. Cardinal during the fourteen

months preceding the trial was two weeks before the trial when he was in her home, and at that time he carried on a reasonable and sensible conversation; that she saw nothing wrong during those two days except that he was just childish and forgetful.

■ The foregoing epitome reflects the principal portion of the testimony relied upon by appellees as a basis for the conclusions reached by the jury and the judgment entered by the court. Since, in passing upon the question here raised by appellant, we must discard all of the evidence except that which is favorable to appellees, we have not quoted any of the testimony given by appellant or any of his witnesses. The question to be determined, therefore, is whether or not the foregoing testimony is sufficient to support the findings of the jury and the judgment of the court cancelling the deed of December 24, 1931, by which R. Cardinal conveyed the land involved to his son, the appellant herein.

■ The record does not show any bad feeling at any time between R. Cardinal and any of the members of his family. No condition is revealed which would indicate he harbored resentment against or indulged discriminating affection for any of his children other than the fact that appellant had remained at home with the parents and had enjoyed closer association with them than had the others. Regardless of this, he had the right to dispose of his property in any manner he saw fit, and his action in doing so must be upheld, unless it can be said from the testimony his mind was in such condition at the time he executed the deed that he was incapable of knowing and appreciating the consequences and effect of his acts in doing so. It is well settled that, although a person may be old and infirm, his mental and physical strength impaired by the wear of years and the ravage of disease, if he responds to the test which is applied to people in the ordinary experiences of life, the adjustment and disposition of his property and business affairs will be upheld by the courts. The familiar observation of Chancellor Kent in Van Alst v. Hunter, 5 Johns Ch., N.Y., 148, and quoted by Justice Walthall of the El Paso Court of Civil Appeals in Whitney v. Murrie, 264 S.W. 270, 274, still governs the courts in adjudicating such matters. It was: "The control which the law still gives to a man over the disposal of his property, is one of the most efficient means

which he has in protracted life to command the attentions due to his infirmities. The will of such an aged man ought to be regarded with great tenderness."

It is permissible to prove the acts and conduct of testators or grantors in deeds executed under circumstances such as are revealed in this case, both before and after such instruments are executed by them, but the material question pertains to his mental condition at the very time he executed the will or deed. Facts revealed by such testimony are considered only as circumstances throwing light upon the probable mental condition at the time of the execution of the instrument. No higher degree of intelligence nor sturdy condition of mind is required than that he knows the condition of his property, what he desires to do with it, and those to whom he wishes to convey it. If the rule were otherwise, it would be difficult indeed to draw a line above which the courts would be justified in approving and below which they would be warranted in destroying his acts in attempting to dispose of his property. Salinas v. Garcia, Tex.Civ.App., 135 S.W. 588; Whitney v. Murrie, Tex.Civ.App., 264 S.W. 270; Brown v. Mitchell, 75 Tex. 9, 12 S.W. 606.

■ It will be noted that none of the witnesses whose testimony we have mentioned gave it as their opinion that R. Cardinal's mind was unsound at any time. On the other hand, his daughter, Mrs. Maxwell, who had lived at the home until she married in 1921, and had been closely associated with her father most of the time since, especially during the three years preceding the date upon which the deed was executed, testified very positively that he was not insane and had never been of unsound mind. She said that neither she nor anyone else had ever said her father was insane and indicated she did not intend to leave such an impression. She said she was just getting at the conclusion that her father was very forgetful. There is no intimation that Mr. Cardinal was suffering from any disease that was calculated to affect his mind, nor did any witness testify that he ever did any act, the consequence and full import of which he did not fully realize at the time he was performing it. The most that can be said of the testimony of these witnesses is that he was forgetful and unable to retain a recollection of his acts after he had performed them. Indeed, his daughter-in-law, Mrs. A. R. Car-

dinal, who lived at Floydada and had been closely associated with Mr. Cardinal during the year 1931, as well as a number of years prior to that date, testified that he talked with sense but that he forgot when it was over. She said, "He knows what he is doing when he is doing it, though he might forget it later." She said that some two weeks before the trial he had been in her home and that, at that time, he carried on a reasonable and sensible conversation and she saw nothing wrong during the two days he was there except he was just childish and forgetful. Although the record shows Mr. Cardinal was present in the courtroom during the trial, he was not placed upon the witness stand and no reason is given for failure to produce him as a witness other than it was claimed he became sick and had to be removed. The deed was executed in 1931 when Mr. Cardinal was 87 years of age. The fact that he was still alive in 1938 and able to be in the courtroom during the trial when, the record shows, he was 95 years of age would indicate unusual physical strength and suggest mental fortitude of an unusual sort, especially in the absence of a showing of mental disturbance or disease calculated to affect or destroy his mental faculties. In our opinion, this evidence is not sufficient to form the basis of the conclusion reached by the court and the jury that, when he executed the deed December 24, 1931, R. Cardinal did not have sufficient mental capacity to understand the nature, effect and consequence of his act. It reveals nothing more than the advent of physical and mental weakness which are calculated to accompany declining years. Mental and physical disintegration do not produce the inference of that mental incapacity to dispose of one's property which is necessary to make of it a valid disposition. In fact it is conceivable that these things could furnish strong indication of his wisdom in doing so. The opinions of the courts reveal many instances where property was disposed of by aged people because of their decrepitude and inability properly to look after it and take care of it. Indeed, property frequently has been conveyed under such circumstances to those in whom the grantor had confidence because of the fact that he realized the encroachment of old age and mental and physical weakness to the extent that he, himself, was unable to do so. Certainly evidence which goes no further than to prove he is forgetful and unable to remember his acts after they have been performed is not sufficient of itself to establish the fact that he was incapable of knowing the effect and consequence of the act when it was performed. The record shows the land conveyed was encumbered by liens. Mr. Cardinal was a farmer and it was necessary that the land be cultivated each year. Tending the land, planting, harvesting and disposing of the crops necessarily entailed no small amount of judgment and constant physical and mental vigilance. We cannot say that, at his age of 87 years, he did not realize the gradual disintegration of his physical and mental powers to the extent that he was unable properly to attend to his properties, and that such realization did not enter largely into his conclusion to convey it to his son, who was and for many years had been living at home with him. Moreover, one of the witnesses had, in 1937, six years after the deed in question was executed, accepted from Mr. Cardinal a deed of gift of 50 acres of land in Oklahoma and she testified that she was claiming it under the deed and supposed he knew what he was doing when he executed it.

As we have said, this evidence is, in our opinion, insufficient to constitute a basis for the verdict and judgment rendered. We are quite confident of our accuracy in reaching this conclusion but if there should be doubt as to this, we have no hesitancy in concluding the judgment still must be reversed because the verdict of the jury is directly opposed to the overwhelming weight of the evidence. In addition to the manifest weakness of the testimony of the witnesses produced by appellees, appellant produced witnesses whose testimony reveals a mind that was highly capable of understanding the nature and consequences of his act at the time Mr. Cardinal executed the deed. C. W. Pollan, testifying for the appellant, said he had lived near the Cardinal family in Floyd County for a number of years; that he knew and frequently visited and worked with Mr. Cardinal during the years from 1925 to 1934. He said that Mr. Cardinal told him on several occasions before the deed was executed he intended to convey his land to appellant and that in 1932 Mr. Cardinal told him he had done so. He said that he had never seen Mr. Cardinal do or say anything a normal person would not have done or said and that Mr. Cardinal told him there were many debts against the land and he intended to convey it to appellant in order that the latter may pay off the debts and take care of him and Mrs.

Cardinal the rest of their days; that it seemed this was the only chance of living the rest of their lives. He said he had never known of Mr. Cardinal's failure to recognize an acquaintance and that he recognized the witness on the street that morning, although he had not seen the witness for more than a year.

Mrs. C. W. Pollan testified for appellant that she and her family moved to Floyd County in 1920 and had lived near the Cardinals for a number of years; that she was well acquainted with them and had visited in their home on many occasions, sometimes once a week, sometimes twice, and sometimes every two or three weeks, and that during all this time, which included the year 1931, Mr. Cardinal seemed all right to her; that he talked with as good mind as anyone, and she had never observed anything unusual about him. She said she visited with them in 1931 and she observed no difference in Mr. Cardinal's demeanor or conversation or his mind from that of an ordinary person or from its former condition.

■■ A. C. Goen testified on behalf of appellant that he took the acknowledgment of R. Cardinal and his wife to the deed of December 24, 1931. He said he had a conversation with them in which something was said about a loan; that he had known the Cardinals for twelve or fifteen years; that they both wanted to sign the deed and he thought they were mentally capable of doing so and knew what they were doing. Otherwise, he said, he would not have permitted them to execute it. He said he had dealt with Mr. Cardinal all along from about 1919 up until the date the deed was executed and he did not observe anything wrong with Mr. Cardinal on the occasion when he signed the deed. These witnesses were wholly disinterested in the subject matter of the litigation. Their knowledge and observation of the mental qualifications of Mr. Cardinal seemed to be as substantial as one's knowledge could be of another with whom he enjoyed the ordinary acquaintance and business and friendly relations of neighbors. Their testimony refers largely to the very time when the deed was executed and it, coupled with the statements of some of the appellees to the effect that Mr. Cardinal knew what he was doing at the time he did it and that he was not insane and no one had ever said he was of unsound mind, we think so overwhelmingly destroys the effect of the inferences, opinions and testimony offered by the plaintiffs in the case as to make the whole testimony so overwhelmingly against the jury's findings that the verdict of the jury and judgment of the court are palpably wrong. We think the weight and preponderance of the testimony are opposed to the conclusions reached by the jury and that it is of such a nature as to impel the conviction that to uphold the verdict would be a miscarriage of justice. Where this condition prevails it is the duty of the court to set aside the verdict. Crow v. Childress, Tex.Civ.App., 169 S.W. 927. It may be well to observe just here that, in addition to the fact, that all of the witnesses who testified for appellees in regard to the condition of Mr. Cardinal's mind were not only interested witnesses, but were parties to the suit, except Mrs. A. R. Cardinal and she was the wife of one of the plaintiffs. The conclusions and opinions expressed by them did not relate to facts, but were conclusions of law to the effect that, when he executed the deed, Mr. Cardinal did not have mental capacity to know and realize the nature and consequences of his act. Moreover, one of them, Mrs. Boudreau, admitted that in 1937, six years after the deed in question had been executed, during which time she and her sister testified the condition of Mr. Cardinal's mind had gradually grown worse, she accepted from him a deed conveying to her as a gift 50 acres of land in Oklahoma; that she was, at the time of the trial, claiming the land under that deed and that she supposed he had mental capacity at the time it was executed to know and understand what he was doing. While the interest of the witnesses in the litigation did not destroy their testimony it cannot, in the nature of things, carry the weight of like testimony coming from disinterested witnesses.

In addition to the testimony of his witnesses, appellant testified that he had been with his father for fifty years; that his association with him was very close during all that time and he did not observe anything that was peculiar in his condition in 1931 when the deed was executed. He said his father was getting old and unable to work and that his father and mother wanted him to take the land and manage the business affairs; that, up to the time the deed was executed, his father directed the operations of the farm and all of his business affairs, but that, since it had been conveyed to him, he had assumed its entire

management, directed all of the operations and attended to the business matters.

The reflection of the testimony impels us to the conclusions we have reached and from what we have said it is obvious that, in our opinion, this contention of appellant must be sustained.

 The second contention made by appellant is raised under his seventh and eighth propositions. He contends the court erred in overruling his objection to the testimony of Mrs. John W. Maxwell to the effect that in her opinion her father did not have sufficient mental capacity on December 24, 1931, to know and appreciate the nature and consequence of his act in executing the deed. The question propounded to Mrs. Maxwell was subject to objection because it called for her opinion as to the mental capacity of R. Cardinal to appreciate the nature and consequence of his act in executing the deed. It is well settled by many decisions of our courts that no witness may be permitted to give his opinion as to mental capacity to execute a deed or will. That is always a question for the jury. It matters not whether the witness be an expert, a physician or professional witness of any kind, in a case of this nature he will not be permitted, over proper objection, to express his opinion of the capacity of a testator or grantor to execute a will or deed because such opinion has the effect of invading the province of the jury. Witnesses may express their opinions upon the mental condition such as the sanity or insanity of the testator or grantor and even those who are not experts or professionals may do so when they have had contact, association and sufficient observation to qualify them so to do. The matter of legal capacity to perform the act of executing a deed or will, however, is an entirely different question and one upon which it is now well settled no witness is permitted to express his opinion in a case of this kind. The distinction we here make is ably discussed and the law pertaining to it is thoroughly expressed and settled by the Supreme Court in the case of Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A.

64, which has consistently been followed by the courts of this state. Pickering v. Harris, Tex.Com.App., 23 S.W.2d 316; Reynolds v. Porter, Tex.Civ.App., 54 S.W.2d 1086; Harrison v. Davis, Tex.Civ.App., 58 S.W.2d 1025; In re Finkelstein's Estate, Tex.Civ.App., 61 S.W.2d 590; Jones v. Selman, Tex.Civ.App., 109 S.W.2d 1003.

 While the question asked the witness and the information which it sought to elicit from her were subject to objection and the testimony was not admissible over proper objection, this contention of appellant cannot be sustained for the reason that the objection made was not such as to cover the objectionable features of the testimony. It was based upon the ground that the witness had not shown she was qualified to testify as to the "acts and conduct of R. Cardinal or rather to state whether or not he was of sound or unsound mind." In the discussion of the objection counsel for appellant insisted that "the criterion is 'was he capable of knowing the consequences of his acts?'" Thus it would seem counsel was contending that the witness must give her opinion, if at all, upon the mental capacity of Mr. Cardinal—the very element of her testimony that was objectionable and rendered it inadmissible. For this reason we cannot sustain this contention of appellant, although the testimony itself was clearly not admissible over a proper objection.

In view of our holdings under the assignments we have discussed and the disposition of the appeal which our conclusions require, we deem it unnecessary to discuss the remaining contentions. It is likely neither of them will arise upon another trial. We suggest, however, that if, upon another trial, appellant, in the alternative or otherwise, desires to make an issue upon the adjustment of alleged amounts paid by him upon indebtedness and liens against the land, his pleadings and evidence be strengthened in respect thereto, if possible, and the issue more clearly presented.

The judgment of the court below will be reversed and the cause remanded.